**In re Janet M. LEVER, Debtor.**

**Abraham CANTOR, et al., Plaintiffs,**

**v.**

**Janet M. LEVER, Defendant.**

**Bankruptcy No. B90–16122.
Adv. No. B91–1176.**

United States Bankruptcy Court,
N.D. Ohio, E.D.

Feb. 14, 1992.

Abraham Cantor, Painesville, Ohio, for plaintiffs.

Stephen J. Futterer, Eastlake, Ohio, for defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

In her voluntary Chapter 7 case, the Defendant–Debtor Janet M. Lever scheduled nonpriority unsecured debts owing in varying amounts which are owed to Abraham Cantor, Bryan Lever and Ruth C. Jirousek (the Plaintiffs), respectively, on petition Schedule A–3. In this adversary proceeding, the Plaintiffs are seeking an order which, if granted, would render those debts nondischargeable under § 523(a)(5) of the Bankruptcy Code. 11 U.S.C. 523(a)(5). This is a core jurisdiction matter, and the pertinent facts are generally not in dispute. Upon a trial and an examination of the evidence, the following constitutes the Court's findings and conclusions:

Defendant, Janet M. Lever (the Debtor) and Co–Plaintiff Bryan F. Lever (Lever), formerly husband and wife, were divorced in 1989. One minor child issued from that marriage. As part of the divorce decree, custody of the minor child was given to the Debtor, with Bryan Lever obligated to pay specified child support. His claim arises from a state court judgment award of $2,058.00.

Co–Plaintiff Abraham Cantor (Attorney Cantor) served as legal counsel to Bryan Lever during a post-decree hearing in 1990 in the state court. For his representation in that proceeding, he was awarded attorney's fees totalling $1,719.00, on which he presently seeks a nondischargeable ruling. The amount claimed by Co–Plaintiff Ruth C. Jirousek ($2,058.00), Bryan Lever's mother, arises from a loan which she made to her son, Bryan, to assist in fulfilling the Debtor's financial obligations.[1]

The parties' Separation Agreement called for the marital residence to be sold forthwith at fair market value. Any mortgage deficiencies, as a result of the sale, were to be initially satisfied from funds on deposit in a savings account in the Debtor's possession. All further deficiencies, if any, were to be shared by the parties on an equal basis. (See Separation Agreement, p. 3(c)). Subsequent to the divorce, a motion was filed in the state court by Lever to enforce his visitation rights and to require the Debtor to pay her share of the sale closing costs of the marital residence. Thereupon, the state domestic relations court found the Debtor to be in contempt of a prior court order and awarded attorney's fees to attorney Cantor for prosecuting the motion on behalf of Lever. It is undisputed that that award was unpaid by the Debtor. Said attorney's fees ($1,724.43) were, however, ultimately paid by Bryan Lever to Attorney Cantor. The state court judgment finding the Debtor in contempt further found that she had purged herself of the contemptuous conduct.

The dispositive issues are twofold: (1) Whether the attorney's fees awarded to Attorney Cantor in the post-decree state court judgment are a nondischargeable support obligation and (2) Whether the mortgage deficiency on the sale of the marital residence which was totally paid by the former spouse Bryan Lever is nondischargeable as a support obligation. Whether a debt emanating from a state court judgment decree of divorce constitutes a support obligation or a prop-

---

1. Jirousek's claim was previously denied by an earlier summary judgment of this Court.

erty division is a question of federal law, not state law. *In re Calhoun,* 715 F.2d 1103, 1107 (1983). In determining issues of dischargeability under § 523 of the Code the burden of proof is upon the party contesting the discharge of a debt. That burden must be carried by a preponderance of the evidence. *Grogan v. Garner,* — U.S. —, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

*Claim of Bryan Lever:*

■ Under § 523(a)(5) of the Code, debts owing to a spouse, former spouse, or child of a debtor for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, are generally nondischargeable. *See,* 11 U.S.C. 523(a)(5). In the present proceeding, the claim of Bryan Lever was scheduled by the Debtor on Schedule A–3 in an amount of $2,058.00 and arises from a state court judgment.[2] The judgment required the Debtor to pay Bryan Lever $1,724.43, at 10% per annum interest rate, in six equal installments. This judgment resulted from a contempt ruling which found that the Debtor had not paid her share of an escrow deficit which resulted from the sale of the marital residence. Neither the Complaint nor Amended Complaint specifies an amount owed on Lever's claim; however, the amount scheduled ($2,058.00) will be used for purposes of adjudicating this action.

An examination of the Separation Agreement reveals that, *inter alia,* neither party was obligated to pay alimony, and that the agreed upon property disposition was to serve in lieu of any periodic alimony payment (Separation Agreement, pp. 3–4). The Debtor was granted sole custody of the minor child, with Bryan Lever being obligated to make periodic child support payments. Under the Separation Agreement, respecting this support obligation, the parties also agreed to certain visitation privileges. The post-decree hearings in 1990, in part, resulted from an alleged violation of those visitation privileges. In fact, the state court's judgment entry of

September 13, 1990 (Jt.Ex. 5) adopted the Referee's Report dated August 10, 1990 (Jt.Ex. 4), which reflects that the Debtor was found liable for the nonpayment of $1,724.43, plus 10% interest, as her share of the escrow deficit that resulted from the sale of the home. Under the Separation Agreement, the following language is noted under the section captioned "Division of Property":

c) Real Property

. . . The parties agree that the real estate shall be immediately placed on the market for sale at fair market value. In the event that there is an insufficient amount of money to satisfy the mortgage. . . . the deficiency shall first be satisfied from the above-mentioned savings account.

Any additional deficiencies shall be split equally, 50/50, between the parties. (Separation Agreement, Para. 2(c)).

As set forth in the Separation Agreement, the marital home was sold, but was sold at a loss. The amount of Lever's claim against the Debtor's estate purportedly represents the Debtor's share of the escrow deficit which was not paid by the Debtor but, rather, was paid by Lever, in addition to his own deficit payment of equal amount. The Debtor's failure to make such payment was in derogation of the terms of the Separation Agreement. The total deficit was in the amount of $3,448.86. In order to facilitate the closing on the sale, Lever paid the full amount after the Debtor failed to pay her one-half share. Clearly, the state court's contempt ruling (Jt. Exs. 5 and 4) in this regard pertained to a division of property matter. The Separation Agreement's section 2(c) is captioned "Division of Property—Real Property". No language in this particular section of the Separation Agreement refers to either alimony or support. In fact, other sections of the Agreement (Paras. 2(d) and 4) specifically address alimony and support obligations. Section 2(c), "Real Property," has nothing to do with support obligations. Nor does its terms come within the nature

---

**2.** *Lever v. Lever,* Case No. 87 DR 0713, Lake Co.    Ct. of Common Pleas, Sept. 13, 1990. (Jt.Ex. 5).

of support obligations. Thusly, the escrow deficiency amount claimed by Bryan Lever was actually and properly characterized as a matter of property division which is dischargeable under the Bankruptcy Code.

■ Bryan Lever's contention that the escrow deficiency is a nondischargeable support obligation under the "Prior Debts" clause of the Separation Agreement is not well-founded (Id., Para. 3). That specific provision provided, in relevant part:

*The parties agree to pay his or her debts incurred since July 8, 1987.* The parties further agree that Husband shall be solely responsible for the marital debts incurred up to and including July 8, 1987. (Jt.Ex. 1, Separation Agreement, "Prior Debts"). (Emphasis added).

The above-quoted language is clear to indicate that the parties agreed to be responsible for their respective debts incurred after July 8, 1987. Lever's claim for the $1,724.43 deficit share not only is not a support-type nondischargeable debt but, additionally, it is a debt that the Debtor is entitled to discharge notwithstanding the terms of the agreement. To the extent that Lever paid both halves of the escrow deficit, which is undisputed, it provided no support to the Debtor or to their minor child, as the Debtor and minor child were not the purchasers of the home during the subject sale and have not occupied it since the sale occurred. In brief, the escrow deficit payment made by Lever did not subserve a support benefit to the Debtor or the minor child. Rather, it pertained to a dischargeable division of property. *See, In re Kreitzer*, 130 B.R. 505 (Bankr.S.D.Ohio 1991).

*Claim of Abraham Cantor*

Attorney Cantor represented Co–Plaintiff Bryan Lever in the subject post-decree hearing in the state court and is a co-plaintiff in the instant proceeding. The state entered a judgment which, in part, awarded attorney's fees in the amount of $1,719.00 to Attorney Cantor for said representation. (Referee's Report, Jt. Ex. 4). As reflected in the Referee's Report, the fees awarded pertained to Attorney Cantor's prosecution of a motion to enforce

visitation rights of Bryan Lever. A copy of that motion was not introduced into evidence nor was it otherwise provided to the Court. An examination of the Referee's Report (Jt.Ex. 4), however, reveals that Bryan Lever sought relief from the state court on two grounds through two motions to show cause. The first motion to show cause sought an enforcement of Lever's visitation rights. The second show cause motion alleged a failure of the Debtor to pay her proportionate share of the escrow deficit on the house sale. The attorney's fees awarded by the state court covered compensation for both matters:

Defense counsel, Abraham Cantor, testified 16.9 hours were spent between November 20, 1989 and April 10, 1990 on these matters; his hourly rate was $125.00; such rate was reasonable.... (Referee's Report, Jt.Ex. 4). (Emphasis added).

■ Attorney's fees incurred in the process of enforcing visitation rights give rise to a nondischargeable support obligation. *Matter of Vasquez*, 92 B.R. 533, 535 (Bankr.S.D.Fla.1988). Although an obligation to pay support, on the one hand, and visitation privileges, on the other hand, are not interdependent of each other, the utilization of a visitation privilege tends to provide an important form of parental support which, if obstructed, gives rise to a nondischargeable support obligation where enforcement expenses are incurred. That, in part, is precisely what occurred in the action at bar.

■ The state court initially found the Debtor to be in contempt of the visitation provisions of the divorce decree, but ultimately found that she had purged herself of that contempt finding. Nevertheless, the former spouse, Bryan Lever, necessarily incurred attorney's fees to achieve that result. As noted above, Attorney Cantor expended a reported 16.9 hours in prosecuting the motions to show cause. That effort applied to both the visitation issue and the escrow deficit issue. As determined above, claims emanating from the escrow deficit pertained to a dischargeable division of property matter. As such, the time ex-

pended by Attorney Cantor in prosecuting that issue and claim against the Debtor's estate is, likewise, a dischargeable debt. The time expended and invoiced against the Debtor's estate involving the visitation enforcement issue, however, is to be viewed differently. As determined above, the enforcement of visitation rights is in the nature of support and expenses incurred to enforce those rights are hereby determined to be a nondischargeable debt. From the 16.9 hours expended by Attorney Cantor, he invoiced an amount of $2,112.50 (Jt.Ex. 3). Upon consideration of that invoice, the state court awarded reasonable fees in an amount of $1,719.00. (Jt.Ex. 5). An examination of the subject fee invoice (Jt.Ex. 3) reveals no clear delineation of those work activities invoiced for the visitation issue, vis-a-vis, those charges invoiced on the escrow deficit issue. Thusly, the fee award ($1,719.00) will be apportioned equally with respect to both issues.

Accordingly, an amount of $859.50 is hereby determined to be a nondischargeable debt, representing that portion of the fee award pertaining to Attorney Cantor's time expended on the visitation enforcement issue. The remaining $859.50, attributable to time expended on the escrow deficit issue, is hereby determined to be a dischargeable debt for the reason set forth herein.

### CONCLUSION

In view of the foregoing findings and conclusions, the claim of Bryan Lever in the amount of $1,724.43 is hereby determined to be a dischargeable debt. The claim of Abraham Cantor is determined to be nondischargeable in the amount of $859.50. Said claim is dischargeable in the amount of $859.50.

IT IS SO ORDERED.