**Cleda D. BUSH, Appellee,**

v.

**Alvin G. TAYLOR and Barbara F. Taylor, Appellants.**

**No. 88–2145.**

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1990.

Decided Aug. 30, 1990.

Richard Medlock, Little Rock, Ark., for appellants.

Frank Poff, Jr., Little Rock, Ark., for appellee.

Before LAY, Chief Judge,
McMILLIAN, ARNOLD, JOHN R.
GIBSON, FAGG, BOWMAN,
WOLLMAN, MAGILL, and BEAM,
Circuit Judges, en banc.

BOWMAN, Circuit Judge.

Alvin and Barbara Taylor, Chapter 7 debtors under the Bankruptcy Code (Code), have attempted to discharge as a debt the sole and separate property interest of Cleda Bush, Alvin Taylor's former wife, in a portion of a government pension payable to Alvin Taylor. The Bankruptcy Court[1] held that Bush's share of the pension was not a debt dischargeable in bankruptcy and the District Court[2] affirmed. In this appeal brought by the Taylors, we affirm.

On January 3, 1975, a Decree of Dissolution of the marriage of Cleda and Alvin Taylor was entered in Washington State Superior Court for Pierce County. Under the terms of the decree, Cleda and Alvin each were awarded as his or her "sole and separate property" one-half of the pension benefits to which Alvin Taylor was entitled pursuant to his government employment. The government mailed the monthly pension check to Alvin Taylor. It was his responsibility to pay over to his former wife, on a timely basis, her half of each check. By 1982, Alvin Taylor was seriously in arrears on payments to his former wife, now Cleda Bush, so further court action was required. In the same Washington state court, Bush and Taylor executed an agreed judgment and a covenant not to execute. The terms of the court's order and the covenant were as follows: Bush was granted a judgment against Taylor for $16,412.52, an amount equal to the one-half share of pension benefits that Taylor owed Bush through the end of June 1982. In addition, the court modified its previous division of the pension, reducing Bush's share from one-half of the pension to a flat $500 per month, plus one-half of any increases in the pension payments after June 30, 1982. For the rest of his life, Alvin Taylor was to pay Bush's share over to her on the fifteenth of each month. Bush agreed to refrain from any action to execute the judgment provided Taylor paid Bush $8500 by July 15, 1982, and thereafter complied with the monthly payment terms as modified by the order. If, however, Taylor was ever more than twenty days late in remitting a monthly payment, the agreement as to non-execution would terminate and Bush could seek the full amount of the judgment by any legal means necessary.

On May 29, 1987, Taylor, who had stopped making the court-ordered payments to Bush, together with his wife Barbara filed a joint Chapter 7 bankruptcy petition in bankruptcy court in Arkansas, where the Taylors then lived. He listed Bush's interest in the pension as a debt. Bush filed her proof of claim and an objec-

---

1. The Honorable Robert F. Fussell, United States Bankruptcy Judge for the Eastern District of Arkansas.

2. The Honorable Elsijane T. Roy, United States District Judge for the Eastern District of Arkansas. Judge Roy has assumed senior status since the judgment in this case.

tion to discharge. On February 4, 1988, the Bankruptcy Court discharged "[a]ll indebtedness owed by the defendant [Taylor] to the plaintiff [Bush]" that had accrued between execution of the judgment and covenant in 1982 and the Taylors' bankruptcy filing in 1987. Order of Bankruptcy Court at 2. The court further found "that it would be an inequitable result to [Bush] and an unjust enrichment to [Taylor] to allow [him] through a bankruptcy filing to deprive [her] of marital property rights which she received upon divorce," thus refusing to discharge Taylor's obligation to make post-petition payments. *Id.* at 2–3. The Taylors appealed to the District Court. The District Court agreed that all the elements of a constructive trust were present, and also found that "[p]ayments [that] are not yet due and payable do not represent a debt under the Code." Memorandum Opinion of District Court at 4, 5. The Taylors appealed.

During the pendency of this appeal, this Court has received from Barbara Taylor a suggestion of the death of Alvin Taylor. Thus, before we can proceed to the merits, we must decide whether Taylor's death moots the case. We agree with Bush that the case is not moot and that we therefore still have jurisdiction.

■ Upon receiving the suggestion of death, this Court asked the parties for supplemental briefs on the jurisdictional issue. Barbara Taylor submitted a letter brief contending that the case is moot because Alvin Taylor's obligation to Bush died with him. Bush's supplemental brief suggests, *inter alia,* that the United States Office of Personnel Management (OPM), the payor of the pension, has withheld a portion of Taylor's pension benefits pending our disposition of this case. Such a fund held in escrow by a third party clearly would have meant that the case is not moot. In a reply letter brief, however, Taylor argues that those are not the facts, despite a letter dated September 26, 1989, to Bush's attorney in Washington state from the OPM stating its intention to begin withholding funds from Taylor's payments as Bush had requested. Based on all the information

furnished to the Court, it appears that Alvin Taylor received 100% of the post-petition pension benefits and that the Taylors spent all of the money, despite the orders of the federal courts below and the Washington state court. According to Barbara Taylor, there are not even any assets to open a probate estate for her deceased husband. Therefore, Barbara Taylor argues, the funds to which Bush claims she is entitled do not exist, and, according to the state court's order, her right to future payments did not survive Alvin Taylor's death.

Under Article III of the Constitution, we are without jurisdiction unless a case or controversy exists at the time we decide the appeal, not just at the time the suit is instituted. U.S. Const. art. III, § 2; *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975). "To satisfy the Art. III case-or-controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Soc'y v. Heckler,* 464 U.S. 67, 70, 104 S.Ct. 373, 375, 78 L.Ed.2d 58 (1983). If our decision would not afford Bush some actual redress, we would be issuing only an advisory opinion and that we are not constitutionally empowered to do. *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971).

We conclude, however, that this controversy is still a live one: Taylor's death settles only the question of Bush's entitlement to a share of future pension payments, as there will be no such payments; it does not determine her right to a share of the post-petition pension payments made by OPM before Taylor's death. Barbara Taylor is still a party to the bankruptcy action and so also to this appeal. There remains the practical question whether any decision we may make can remedy the alleged wrong, since the Taylors apparently have spent all the funds to which Bush claims she is entitled. On the present record, however, we cannot say that Bush will not be able to obtain some relief, after our resolution of the dischargeability issue, through further legal proceedings, and obviously she cannot venture to seek that relief without this Court's favorable deci-

sion. The Taylors apparently have willfully converted Bush's share of the pension benefits to their own use in violation of the Washington state court order, the Bankruptcy Court order, and the District Court order.[3] Barbara Taylor, we are informed, continues to receive an annuity as life beneficiary of the same pension plan that is at issue here. She also receives a pension of her own, so she is not impecunious. Without expressing any opinion as to the remedies available to Bush against Barbara Taylor or anyone else, we recognize that without a decision from this Court holding that Bush's share of the pension is not dischargeable in bankruptcy, she will be unable to pursue whatever remedies she may have for the financial loss she has suffered.

> Where there is ... a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages.

*Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *cf. In re Van Iperen,* 819 F.2d 189, 191 (8th Cir.1987) (case seeking recovery of property was moot because property at issue was in hands of third party, but by unquestionably legal means). We hold that this case is not moot and turn now to the merits.[4]

The issue raised in this appeal, whether Alvin Taylor's post-petition obligation to pay Bush her share of the pension for as long as he lived was a dischargeable debt within the meaning of the Code, is a question of law. A district court sitting as an appellate court reviews the bankruptcy court's legal conclusions *de novo. In re Euerle Farms, Inc.,* 861 F.2d 1089, 1090 (8th Cir.1988). In reviewing a district court's affirmance of a bankruptcy court's decision, this Court "sit[s] in the same position as did the district court." 861 F.2d at 1090. That is, we review the bankruptcy court's legal conclusions *de novo.*

Under the Bankruptcy Code, "[t]he court shall grant the debtor a discharge" of his debts at the conclusion of the bankruptcy proceedings, subject to certain exceptions. 11 U.S.C. § 727(a) (1988). A debt under the Code is defined as "liability on a claim," and a claim is a "right to payment, whether or not such right is reduced to judgment, ... fixed, contingent, matured, unmatured...." 11 U.S.C. § 101(4), (11) (1988). Barbara Taylor contends that Bush's right to her share of Alvin Taylor's pension benefits comes within that definition.

■ The courts below found a constructive trust in Alvin Taylor's obligation to Bush, and Barbara Taylor argues that this was error. She insists that Alvin Taylor's obligation to pay Bush was a debt—unmatured, but a debt nevertheless—and thus dischargeable in bankruptcy.[5] We dis-

---

**3.** A divided panel of this Court reversed the decision of the District Court in an opinion filed in January 1990. *Bush v. Taylor,* 893 F.2d 962 (8th Cir.1990). When the Court granted Bush's petition for rehearing en banc, however, that opinion automatically was vacated.

**4.** With Alvin Taylor's death, Barbara Taylor is the sole appellant and continues with the same arguments that both Taylors made prior to Alvin's death.

**5.** It could be argued that the 1982 modification of Bush's entitlement, from one-half of the pension to a flat $500 plus one-half of any increases, changed the legal character of the payments from her sole and separate property into a debt Taylor owed to Bush. We do not agree. The modification to a fixed amount approximating one-half of the pension benefits (the reason for the modification is not in the record) does not

alter the fact that a portion of Taylor's pension benefits was awarded to Bush as her sole and separate property. The change in amount—for whatever reason—does not make the payments any less her property than they were originally. The modification provision requiring the fifty-fifty division of subsequent pension increases clearly links the payments to the pension and shows their unmistakable relationship to the original division of the pension.

Nor are we persuaded by the argument that future payments were reduced to judgment by the state court's 1982 order, in which case they would constitute a debt. Only the arrearages from the date of the divorce decree until 1982, $16,412.52, were reduced to judgment; the modification of the amount of the future monthly payments is a separate part of the agreement. The language in the covenant giving Bush the right to execute in the event Taylor breached the agreement pertained to her right to seek recov-

agree. As the courts below held, the facts of this case give rise to a trust relationship between Alvin Taylor and Bush. Her share of the pension was her sole and separate property and Alvin Taylor received it (via the monthly pension checks) as a constructive trustee for her benefit. We have no difficulty in affirming the judgment of the District Court on this ground.[6]

We also agree with the District Court's alternative holding. We believe the District Court correctly concluded that Bush's interest in the post-petition pension payments was not dischargeable because "[p]ayments [that] are not yet due and payable do not represent a debt under the Code." Memorandum Opinion of the District Court at 4 (citing *In re Teichman*, 774 F.2d 1395, 1397–98 (9th Cir.1985)).

■■■■ Since Alvin Taylor's obligation was imposed pursuant to a divorce decree, it conceivably could be specifically covered by the Code. Bankruptcy courts are prohibited from discharging a debtor's obligation to a former spouse for alimony, maintenance, or support, but not if the obligation is a property settlement. 11 U.S.C. § 523(a)(5) (1988); *see, e.g., In re Ramey*, 59 B.R. 527, 530 (Bankr.E.D.Ark. 1986). Taylor's obligation, Bush concedes, was not for alimony, maintenance, or support. At the same time, we have difficulty viewing it as a property settlement within the meaning of the Code, since in reality it appears to have been nothing more than a division of property required by the law of community property that obtains in the state of Washington. But even if this division of community property could be deemed a property settlement within the meaning of the Code, it does not follow

that Taylor's entire obligation to Bush was a dischargeable debt. Not until after the fifteenth of each month when a payment was due but unpaid did that portion of Taylor's obligation become a debt. Accordingly, Bush's share of the post-petition pension payments were not pre-petition debts dischargeable in bankruptcy. *See In re Chandler*, 805 F.2d 555, 557 (5th Cir.1986), *cert. denied*, 481 U.S. 1049, 107 S.Ct. 2180, 95 L.Ed.2d 837 (1987); *see also In re Horton*, 87 B.R. 650, 652 (Bankr.Colo.1987). When the Taylors retained all of the monthly post-petition pension payments, they then (and only then) became debtors of Bush as to her share of the pension, but *post-petition* debts are not dischargeable in bankruptcy. *See In re Teichman*, 774 F.2d at 1397 ("We hold that payments due the wife after the filing of the bankruptcy petition are the husband's post-petition obligations and not subject to discharge under the Bankruptcy Code.").

We do not believe that Congress intended the Bankruptcy Code's grace for honest debtors to be used as Taylor suggests, and Congress's actions with regard to federally regulated pension plans suggest as much. An amendment to the Employee Retirement Income Security Act (ERISA), which governs private pension plans, prohibits the alienation of benefits under such a plan. 29 U.S.C. § 1056(d)(1) (1988). There is an exception, however, for a "qualified domestic relations order" (QDRO) as statutorily defined. *Id.* § 1056(d)(3) (1988). A state court, pursuant to a divorce decree, may use a QDRO to assign rights in a pension plan to a former spouse, and the pension plan administrator pays the beneficiary directly.[7] Congress enacted this 1984 excep-

---

ery of the balance of the arrearages, since Taylor would be paying only about half that amount under the covenant. Clearly Bush could not seek to execute on prospective monthly payments that were not even due as though she had a judgment for them.

**6.** The constructive trust theory would, in our view, apply equally to the arrearages between 1982 and 1987, despite the lower courts' conclusion to the contrary—that this pre-petition amount was dischargeable indebtedness. If Taylor was responsible for the payments as a constructive trustee he was a trustee before the

Taylors filed their bankruptcy petition as well as after. *See In re Teichman*, 774 F.2d 1395, 1399 (9th Cir.1985) ("[U]nless the property settlement agreement created a trust under California law, the pre-petition payments [of one-half debtor's pension due to former spouse] are dischargeable."). Bush has not cross-appealed the lower courts' rulings on the pre-petition payments, however, so the issue is not before us.

**7.** To the same effect is the Uniformed Services Former Spouses' Protection Act of 1982 (USFSPA), 10 U.S.C. § 1408 (1988).

tion to the anti-alienation law "to guarantee that the Nation's private retirement-income system provided fair treatment for women." *Mackey v. Lanier Collections Agency & Serv.*, 486 U.S. 825, 838, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988). By prohibiting alienation of pension benefits, Congress recognized the importance of protecting "a stream of income for pensioners," *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, —— U.S. ——, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990), but later created the just-mentioned exception, thus acknowledging the compelling need for fair treatment of former spouses. 110 S.Ct. at 687 & n. 18. We doubt that Congress ever intended that a former wife's judicially decreed sole and separate property interest in a pension payable to her former husband should be subservient to the Bankruptcy Code's goal of giving the debtor a fresh start. *See In re Eichelberger*, 100 B.R. 861, 866 (Bankr.S.D.Tex.1989) (had the court found a QDRO existed, the required payments would have escaped discharge in bankruptcy); *In re Corrigan*, 93 B.R. 81, 83 (Bankr.E.D.Va.1988) ("The provisions of [the Uniformed Services Former Spouses' Protection Act] indicate Congress' [sic] understanding that division of a pension invests the spouse with a separate and distinct interest in his or her share.... The plaintiff has a vested legal right in her court-ordered share of the defendant's pension," so that share would not be subject to debtor's bankruptcy proceedings).

The judgment of the District Court is affirmed.

ARNOLD, Circuit Judge, with whom LAY, Chief Judge, JOHN R. GIBSON and MAGILL, Circuit Judges, join, dissenting.

This case is about interpreting the bankruptcy laws Congress has enacted, not about doing justice in the abstract. Because the Court, in its zeal for its own brand of justice, ignores Congress's plain command and refuses to discharge the Tay-lors [1] from their debt to Mrs. Bush, I dissent.

At issue in this case is the dischargeability of the Taylors' obligation to pay Mrs. Bush part of some pension benefits. The relevant facts are these. Mr. Taylor used to be married to Mrs. Bush. While they were married, Mr. Taylor acquired pension rights from his employment. In 1975 their marriage ended in divorce. By the terms of the decree, Mrs. Bush received a one-half interest in Mr. Taylor's pension as her "sole and separate property." For a while, Mr. Taylor sent Mrs. Bush (since remarried) her part of the pension each month. He eventually stopped making those payments, however. The parties then entered into an agreed judgment and a covenant not to execute. Mr. Taylor paid some of what he owed in back payments, and promised to pay Mrs. Bush $500 a month and one-half of any increases in the pension as her share of this marital property. Mrs. Bush retained the right to execute her judgment for the full amount owed, if Mr. Taylor failed to make regular payments. He fulfilled that obligation for a while, and then again stopped making payments.

Taylor and his new wife, Barbara, then filed a chapter 7 bankruptcy petition, and that is where this lawsuit begins. The Taylors listed their obligation to Mrs. Bush as a debt, and sought to have it discharged. Mrs. Bush objected. She argued that this obligation couldn't be a debt because the property—the right to one-half of Mr. Taylor's pension—was already hers. The Bankruptcy Court, and the District Court on review, agreed with Mrs. Bush, and refused the Taylors' request for discharge. As this Court notes, both courts supported their decision with alternative holdings. First, both courts held that this obligation was not a pre-petition debt within the meaning of the Bankruptcy Code. Thus it could not be discharged. Alternatively, both courts held that the divorce decree created a constructive trust for Mrs. Bush's benefit, and further, that that trust relationship (between Mr. Taylor and Mrs.

---

**1.** I agree with the Court that this case is not moot even though Mr. Taylor died during the pendency of this appeal. The question whether the obligation he and his current wife owe Mrs. Bush is dischargeable in bankruptcy still has legal and practical consequences.

Bush) should not be disturbed in bankruptcy. Today Our Court adopts both these grounds. I think it errs in doing so.

The Taylors' obligation to Mrs. Bush falls within the Bankruptcy Code's broad and flexible definition of a debt. Since it is a debt, it is dischargeable. The words of the statute leave *no legitimate room for* doubt. Under 11 U.S.C. § 101(11), a "debt" is simply a liability on a claim. A "claim," in turn, is:

> (A) [a] right to payment, whether or not such right is reduced to judgement, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . .

11 U.S.C. § 101(4). Bush has a claim against the Taylors. She had, each month for as long as Mr. Taylor lived, a right to payment of a portion of his pension.

The Court suggests that there can be no discharge in this case because, instead of one debt, it involves a lot of mini-debts, each accruing on the fifteenth of every month. This reasoning ignores the Code's plain inclusion of unmatured debts within the definition of dischargeable debts. The fifteenth of each month brings partial maturity of *the* debt in this case, not a new debt. This "many-debts" understanding of the Taylors' obligation is further undermined by Mrs. Bush's theory of the case: part of the pension has been hers since the divorce. Whatever her interest in this property, it does not appear on the fifteenth of each month. Right reason and the plain meaning of the Code point unequivocally in one direction: there is only one debt in this case, and it is dischargeable.

A former spouse's obligations for alimony, maintenance, and child support are not debts under the Code, 11 U.S.C. § 523(a)(5), and therefore are not dischargeable. But Mrs. Bush stipulated below that the Taylors' obligation was for a property settlement, and was not in the nature of alimony, maintenance, or support. The Court seeks to avoid this characterization by labeling the Washington court's action a division of property rather than a property settlement, *ante* at 993. This, however, is a distinction more subtle than real, given counsel's arguments in this case. Washington is a community-property state, and that may well affect the nature of Mrs. Bush's property rights under the divorce decree. Property is, after all, a creature of state law. But Mrs. Bush has not argued—not in this Court or in the District Court or the Bankruptcy Court—that the Taylors should be denied a discharge because of the special pre-divorce nature or origin of her property rights in the pension. That argument might be promising. It is, however, a matter of Washington state law, of which neither the Court nor I can be certain, because no one has argued the matter. This theory is foreclosed to Mrs. Bush at this late date in the suit. And it is likewise inappropriate for the Court to inject the issue into the case now.

The Court also places great weight on the fact that the divorce decree speaks of Mrs. Bush's interest in Mr. Taylor's pension as her "sole and separate property." But that language does not compel the result sought by the Court. Whenever a debt arising from the division of marital property is discharged, the non-debtor spouse is thereby deprived of his or her sole and separate property. That is the hard, but legislatively settled, fact of bankruptcy involving former spouses. Whatever the merits of that decision, Congress has not excepted marital property settlements from the reach of bankruptcy. And we are not at liberty to redefine "debt" in order to accomplish that result. The Taylors' obligation to make periodic payments to Mrs. Bush is a debt. It should, pursuant to their request and along with the rest of their debts, be discharged.

The Court also affirms the District Court's alternative holding that the nature of this obligation implies a constructive trust. On this theory, the Taylors received one-half of Mr. Taylor's pension in trust for the benefit of Mrs. Bush. No Washington authority is cited to support this holding, though everyone agrees that the Taylors' obligation arose there. In fact, it appears that Washington, generally—though not al-

ways—requires some fraud or over-reaching before imposing a constructive trust. *Compare In re Marriage of Rhoads,* 645 P.2d 1153, 1154 n. 1 (Wash. App.1982), *with Department of Revenue v. Puget Sound Power and Light Co.,* 103 Wash.2d 501, 515, 694 P.2d 7, 15 (1985) (en banc) (Dore, J., concurring and dissenting). There has been no claim or proof of any such wrongdoing here. The Court is, of course, correct that the desire to prevent unjust enrichment is the animating principle of every constructive trust. G.T. Bogert, *Trusts* § 77 (6th ed. 1987). There has also been no showing of any such enrichment—beyond what always occurs when any bankrupt is given a fresh start.

As far as the Code is concerned, Bush's loss is not materially different from that of any creditor who advances goods or services or money before bankruptcy, and is then barred from collecting his due. There is a sense in which anyone who avoids his debts is unjustly enriched, yet that is the whole purpose of the bankruptcy laws. Unjust enrichment is the other side of the fresh-start coin. We cannot allow the mere label "constructive trust" to circumvent that purpose. The Court's citation of the Employee Retirement Income Security Act and the Uniformed Services Former Spouses Protection Act, *ante* at 993–994, likewise misses the mark. Rather than showing some generalized congressional intent to guarantee fair treatment for former spouses, those laws show Congress's particularized intent to protect spouses within those statutory schemes. In the Bankruptcy Code, Congress has also chosen to protect former spouses—but only in matters of alimony, maintenance, and child support, not with regard to property settlements.

Statutes require policy choices, and it is beyond the legitimate power of courts to choose differently once the law is written. Under the law as Congress gives it to us, the Taylors are no different from any other debtors seeking relief, and their obligation to Mrs. Bush is no different from any other debt. They are entitled to be discharged.