In re Carlos D. RUL–LAN, Debtor.

Carlos D. RUL–LAN, Plaintiff,

v.

Gladys RUL–LAN, Catherine Carroll–Fisher, and Samuel D. Williamowsky, Defendants.

Bankruptcy No. 94–42793–ABF.
Adv. No. 95–4057–ABF.

United States Bankruptcy Court,
W.D. Missouri.

Sept. 7, 1995.

Dean Garland, Law Office of Roy Bennett, Shawnee, KS, for plaintiff.

Daniel S. Rabin, Berman, Singer & Rabin, P.A., Kansas City, MO, for defendants.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Plaintiff/debtor ("debtor") brings this adversary proceeding to determine the dischargeability of two debts arising from a default judgment entered against debtor in the Circuit Court for Montgomery County, Maryland (the "Maryland Court"). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has juris-diction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1).

## FACTUAL BACKGROUND

Debtor and defendant were married on January 10, 1952, in Ponce, Puerto Rico. They eventually moved to Maryland where Mrs. Rul-lan was living when they separated in January of 1989. Mrs. Rul-lan filed a Complaint for Absolute Divorce (the "Complaint") in Montgomery County, Maryland on October 23, 1990. For reasons not fully explained, the Complaint was placed on the "stet" or inactive docket and no further action was taken toward dissolution of the marriage until 1994. Debtor moved first to Pennsylvania and eventually moved to Missouri where he now lives.

Debtor is a medical doctor who earns approximately $7,500.00 a month. He also receives $1,167.00 a month in Social Security payments and $1,083.00 a month from a private pension. Dr. Rul-lan filed a Chapter 7 bankruptcy petition on October 20, 1994.

Mrs. Rul-lan continues to reside in a condominium located at 20127 Waterside Drive, Germantown, Maryland (the "Condominium"). She did not appear at the hearing on this matter, but she is described as a sixty-eight year old woman in poor health with no job skills.

While there is some dispute as to who did what to whom, it appears that Dr. Rul-lan attempted to file for divorce in Missouri, apparently assuming Mrs. Rul-lan had abandoned the action in Maryland. Upon receiving notice of the filing, Mrs. Rul-lan retained Catherine Carroll–Fisher, an attorney in Maryland who is a defendant in this case. Ms. Carroll–Fisher then removed the original Complaint from the stet docket on July 1, 1994. A "pendente lite" hearing was scheduled in the Maryland Court for October 21, 1994. Debtor claims that notice of the bankruptcy filing was sent to all parties to the "pendente lite" action, but the hearing in Maryland was conducted anyway. Debtor was not present. At said hearing Mrs. Rul-lan obtained a judgment for pendente lite, or temporary alimony, against debtor in the amount of $4,500.00 per month and an award

of attorney's fees in the amount of $3,000.00. Dr. Rul-lan then filed an adversary proceeding to invalidate the "pendente lite" order of the Maryland Court and seek damages for violation of the automatic stay.[1] Mrs. Rul-lan moved the Court for relief from the automatic stay to continue the dissolution proceeding in the Maryland Court. The parties agreed to lift the automatic stay upon two conditions. Dr. Rul-lan agreed to dismiss with prejudice the adversary proceeding, and Mrs. Rul-lan agreed to set aside the temporary alimony order and any income withholding order entered following the hearing in Maryland on October 21, 1994. This Court entered such an Order on January 6, 1995. Doc. # 15, Case No. 94–42793.

The hearing on the Complaint was conducted in the Maryland Court on February 8, 1995. Neither Dr. Rul-lan nor Dr. Rul-lan's attorney attended said hearing. Dr. Rul-lan testified in this Court that he received no notice of the February 8, 1995, hearing. Mrs. Rul-lan testified at the hearing in Maryland that Dr. Rul-lan had agreed at the time of the separation to pay for all her necessities and to pay all of her bills. She also testified that he did so until the dissolution proceedings were activated in July, 1994. Pl. Ex. # 2 at 17.

Dr. Rul-lan testified at this hearing that he had given Mrs. Rul-lan almost all of their personal property at the time of the separation. He also testified he gave her some 1,300 shares of stock in Philip Morris. He further testified that he withdrew approximately $85,463.75 in a lump-sum benefit from his pension plan in 1988. He did not dispute defendant's testimony that he received an employee stock option plan payout of $28,210.00 in 1989. There was testimony in the Maryland Court proceeding that Dr. Rul-lan owns cemetery lots in Puerto Rico valued at

$3,000.00 and is entitled to collect $9,000.00 in pension benefits in Puerto Rico. Pl.Ex. # 2 at 36. Other assets Dr. Rul-lan listed on his bankruptcy schedules include household furnishings valued at $1,000.00, jewelry valued at $1,000.00, clothing valued at $200.00 and a 1989 Chrysler New Yorker valued at $2,000.00. Schedule B, Case No. 94–42793.

The Maryland Court entered a Judgment of Absolute Divorce on February 9, 1995. Said judgment awarded Mrs. Rul-lan "a Monetary Award of $51,000.00 against [Dr. Rul-lan] as settlement of all marital property issues." Pl.Ex. # 1. The judgment also awarded Mrs. Rul-lan $4,500.00 per month in indefinite alimony, retroactive to July, 1994. Additionally, the Maryland Court awarded attorney's fees "in the names of respective counsel" in the sum of $10,000.00. *Id.* Debtor has appealed the judgment in the Maryland Court of Appeals, but he does not contest the award of alimony in this proceeding. He does, however, ask this court to find the monetary judgment for $51,000.00 and the award to defendants for $10,000.00 in attorney's fees are dischargeable obligations in debtor's bankruptcy.

### DISCUSSION

#### A. Monetary Award

I turn first to the monetary award of $51,000.00. There are three issues to be decided. The first issue is whether such award represents a pre-bankruptcy obligation which can be discharged in this bankruptcy. If so, the second issue is whether such obligation is a dischargeable property settlement, as opposed to nondischargeable alimony.[2] The third issue is whether debtor waived his discharge as to this obligation.

■ The Maryland Court found that Dr. Rul-lan had dissipated approximately $103,-

---

1. I note that the Bankruptcy Reform Act of 1994, which became effective October 22, 1994, two days after the filing of this case, excepts from protection of the automatic stay any action for the establishment or modification of an order for alimony or maintenance. 11 U.S.C. § 362(b)(2)(A)(ii).

2. Prior to the passage of the Bankruptcy Reform Act of 1994 (the "Reform Act"), debts resulting from a property settlement in a dissolution proceeding were not excepted from discharge. 11 U.S.C. § 523(a)(5). The Reform Act added section 523(a)(15) to the Bankruptcy Code (the "Code") which authorizes the Court to determine the dischargeability of property settlement debts. 11 U.S.C. § 523(a)(15). However, debtor filed this bankruptcy case on October 20, 1994, and the effective date of the Reform Act is October 22, 1994. Pub.L. No. 103–394 § 702, 108 Stat. 4106 (1994).

000.00 in assets, and, then awarded Mrs. Rul-lan a money judgment in the sum of $51,-000.00. Pl.Ex. #2 at 47. The issue is whether such money award is a pre-bankruptcy obligation. Section 727(b) of the Bankruptcy Code provides that a discharge in Chapter 7 serves to discharge a debtor "from all debts that arose before the date of the Order for Relief". 11 U.S.C. § 727(b).[3] Therefore, only if the $51,000.00 property settlement is a debt that arose before the bankruptcy filing can the debt be discharged in this case.

The Code defines a "debt" to be a "liability on a claim". 11 U.S.C. § 101(12). A "claim" is "[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

■ These definitions are intended to be "expansive". *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990). The Legislative History of these sections indicates that "obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case". S.Rep. No. 95–989.

Dr. Rul-lan's obligation to pay Mrs. Rul-lan $51,000.00 is a debt which arose before the Order for Relief. The dissolution proceeding was filed prior to the bankruptcy. Indeed, in awarding $51,000.00 the Maryland Court first found that Mr. Rul-lan had squandered joint assets of approximately $103,-

000.00, and allocated approximately half of that total to Mrs. Rul-lan. Any dissipation of assets, therefore, occurred prior to the bankruptcy. Defendants argue that *Bush v. Taylor,* 912 F.2d 989 (8th Cir.1990), should be read to mean that the obligation to pay Mrs. Rul-lan $51,000.00 is a post-petition debt. In *Bush,* the Eighth Circuit found that a former wife's one-half interest in her former husband's pension was a nondischargeable debt, in part because it did not become a debt until it was due and payable each month. The Court found that the ex-wife had been awarded a one-half interest in the pension as her sole and separate property, and that the obligation to turn such property over to her was nondischargeable. However, the Eighth Circuit has recently refused to extend the holding in *Bush* beyond cases in which specific property has been set apart to the debtor's ex-spouse. *Affeldt v. Westbrooke Condominium Ass'n (In re Affeldt)* 60 F.3d 1292, 1296, n. 5 (8th Cir.1995). Unlike *Bush,* the Maryland Court did not find that Mrs. Rul-lan has an ownership interest in specific property. Indeed, the Maryland Court made no award at all as to Dr. Rul-lan's pension plan. Pl.Ex. #2 at 46. Instead, the Court simply found that Dr. Rul-lan owes her $51,-000.00 and entered judgment in that amount. Since that obligation arose before the bankruptcy, it is dischargeable unless an exception applies.

■ This leads me to the second issue. Section 523(a)(5) excepts from discharge certain obligations found to be in the nature of alimony, maintenance, or support.[4] Property

---

3. Section 727(b) reads as follows:

 (b) Except as proved in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

4. Section 523(a)(5) of the Bankruptcy Code provides as follows:

 (a) A discharge under section 727, 1141, 1221(a), 1228(b), or 1328(b) of this title does

not discharge an individual debtor from any debt—

 . . . . .

 (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a government unit, or property settlement agreement, but not to the extent that—

 . . . . .

 (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

11 U.S.C. § 523(a)(5).

settlement obligations are, therefore, dischargeable. The party objecting to the dischargeability of certain debts under section 523(a) bears the burden of proving each element of the objection by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); Fed.R.Bankr.P. 4005. Whether an obligation is in the nature of support or a property settlement is a matter of federal bankruptcy law. *Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1056 (8th Cir.1983). The function the award was intended to serve is determinative. *Telgmann v. Maune (In re Maune)*, 133 B.R. 1010, 1014 (Bankr.E.D.Mo. 1991).

Here, there is little doubt that the money award of $51,000.00 is a dischargeable property settlement. The Maryland Court made a separate alimony award of $4,500.00 per month. The $51,000.00 award was intended to compensate Mrs. Rul-lan for assets that had allegedly been squandered by Dr. Rul-lan over a period of years. Had those assets not been squandered, they would have been available for division between the parties. The obligation is therefore dischargeable. *Wright v. Wright (In re Wright)*, 184 B.R. 318, 322 (Bankr.N.D.Ill.1995).

 Even though the $51,000.00 judgment is a dischargeable property settlement obligation, which arose pre-petition, defendants claim the Order Granting Relief From Automatic Stay acts as a waiver of discharge as to such obligation. Said Order provides:

> IT IS THEREFORE ORDERED that Gladys T. Rul-lan be, and is hereby, granted relief from the automatic stay to continue to pursue any state court action in connection with her divorce from the Debtor including, but not limited to, the case now pending in the Circuit Court of Montgomery County, Maryland, Civil No. 66466, captioned *Gladys T. Rul-lan v. Carlos Damian Rul-lan*, and collect any alimony, property or payments in connection with any such divorce proceeding.

Doc. # 15, Case No. 94–42793. The judgment in the amount of $51,000.00 is not "alimony". Nor, as previously shown, does such judgment give Mrs. Rul-lan access to any specific property of the debtor. Nor does it give her the right to collect periodic payments in any specified amount. Mrs. Rul-lan in effect argues that in consenting to such Order Dr. Rul-lan waived his discharge as to any pre-petition obligations due and owing to Mrs. Rul-lan. The Code is very specific about the manner in which a debtor can waive the discharge in bankruptcy. *Miller v. Gentry (In re Miller)*, 169 B.R. 715, 717 (D.Kan.1994). The Code provides that the debtor must execute a written waiver of discharge which is then approved by the Court. 11 U.S.C. § 727(a)(10). Such waiver "must present a conscious and informed judgment by the debtor as to the consequences thereof, specifically denote the creditor(s) covered thereby, and any terms or provisions qualifying such waiver." *In re Mapother*, 53 B.R. 433, 435–36 (Bankr.W.D.Ky.1985). Further, the Clerk of Court must give notice to all creditors pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure after the Court approves said waiver. Fed.R.Bankr.P. 4006. Rule 2002 provides that "the clerk ... shall give the debtor, all creditors, and indenture trustees notice by mail of ... (6) the waiver, denial, or revocation of a discharge as provided in Rule 4006. Fed.R.Bankr.P. 2002(f). No such notice was ever sent in this case. Additionally, the appropriate way to waive discharge as to a specific debt, as opposed to waiving the discharge in the bankruptcy case, is through the use of reaffirmation agreements. 11 U.S.C. § 524(c); *Chilcoat v. Minor (In re Minor)*, 115 B.R. 690, 693–94 (D.Colo.1990) (citing 4 Lawrence P. King, et al., Collier on Bankruptcy ¶ 727.12, at 727–89 (15th ed. 1995)) (stating parties "should not be permitted to use section 727(a)(10) to avoid the reaffirmation requirements"). I do not find that the language in the Order Granting Relief From Automatic Stay constitutes a conscious, informed judgment by the debtor to waive his discharge as to dischargeable debts, or by the Court to approve such a waiver.

 In any event, the automatic stay remains in effect only until a discharge is granted because the discharge itself voids any judgment obtained at any time. 11

U.S.C. § 524(a).[5] Here, such discharge was entered on March 30, 1995.

Thus, the issue is whether the discharge was effective as to the property settlement obligation. As shown, it was, and that debt is discharged.

■ Finally, defendants argue that the monetary award created a lien against Dr. Rul-lan's interest in the Condominium which arose at the time the petition for divorce was filed in 1990. As such, the argument goes, the debt is secured by Dr. Rul-lan's interest and is, therefore, nondischargeable. Actually, it appears that the Maryland Court simply refused to deal with the most significant piece of property owned by the parties at the hearing. Instead, the Maryland Judge stated that "the Court will just direct that, in effect, it [the Condominium] is equally owned, and then they will have to see what happens with that later on." Pl.Ex. # 2 at 42. Barclays American Mortgage Corporation ("Barclays") holds the mortgage on the Condominium. This Court granted Barclays' Motion to Lift Stay in order for Barclays to begin foreclosure proceedings against the Condominium on April 25, 1995. Doc. # 31, Case No. 94–42793. The trustee, in effect, abandoned any interest he had in the Condominium by letter dated April 24, 1995, when he withdrew any objection he had to Barclays' Motion to Lift Stay. Case No. 94–42793. The estate, therefore, has no further interest in the Condominium. And, the issue of whether Mrs. Rul-lan has a lien on Dr. Rul-lan's interest in the Condominium does not affect, and is not affected by, a determination of dischargeability. The lien, if valid, survives whether or not the obligation is dischargeable. Therefore, I make no determination as to the applicability of Maryland lis pendens law, but leave that to the Maryland Court in connection with any further determination it makes as to the Condominium.

**5.** Section 524(a) of the Code reads as follows:
 (a) A discharge in a case under this title—
 (1) voids any judgment at any time obtained, to the extent such judgment is a determination of the personal liability of the debtor

**B. Attorney's Fees**

■ The next question for decision concerns the dischargeability of the attorney's fee award of $10,000.00. Once again, the first issue is whether such obligation arose prior to the filing of the bankruptcy. To the extent such charges arose pre-petition, they are dischargeable unless excepted from discharge by section 523(a)(5). To the extent such fees arose post-petition, they cannot be discharged in this case.

The debtor's bankruptcy case was filed October 20, 1994. The bills submitted by defendants reflect that Mrs. Rul-lan first contacted Ms. Carroll–Fisher's firm on May 26, 1994. Four bills were sent to Mrs. Rul-lan prior to October 20, 1994. A fifth, dated October 31, 1994, consists substantially of fees and expenses incurred prior to October 20. The services performed from October 20 through the end of the month relate largely to the hearing held on October 21, 1994. The parties subsequently agreed that such hearing was held in violation of the automatic stay in this case.

The five bills through October 31, 1994, total $6,419.20, or 53.27% of all the billings. The three later bills total $5,628.97, or 46.73% of all the billings. The Maryland Court awarded fees of $10,000.00. I find that $4,673.00 of that figure represents a post-petition obligation which cannot be discharged in this bankruptcy case. I further find that $5,327.00 represents a pre-petition obligation.

■ I turn next to the dischargeability of the pre-petition obligation under Section 523(a)(5). Once again, the determinative question is the function the award was intended to serve. The only evidence before this Court of the Maryland Court's intent in awarding defendants attorney's fees is to be found in the Judgment of Absolute Divorce (the "Judgment"), Pl.Ex. # 1, and the transcript of the hearing in Montgomery County, Maryland on February 8, 1995 (the "Transcript"). Pl.Ex. # 2. The Judgment states:

 with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived.
11 U.S.C. § 524(a).

ORDERED that the Defendant [debtor here] contribute the sum of $10,000.00 to Plaintiff for counsel fees and costs in prosecuting this case, and it is further

ORDERED that said award of counsel fees be hereby reduced to a judgment against the Defendant in the names of respective counsel in the sum of $10,000.00. Pl.Ex. # 1. The Judgment gives no clear clue as to the function the Maryland Court intended the award of attorney's fees to serve. The Transcript, however, is more informative. The Maryland Court was reluctant to award attorney's fees finding that Dr. Rul-lan "doesn't seem to be in the best financial position to make payment of much in the way of attorney's fees." Pl.Ex. # 2 at 51. Mrs. Rul-lan's attorney responded that Mrs. Rul-lan was forced to reopen the divorce case in Maryland because Dr. Rul-lan filed for divorce in Missouri. Id. at 52. The Maryland Court then awarded attorney's fees apparently without reference to either parties' ability to pay or to the exact amount of fees incurred.[6] The Maryland Court also awarded Mrs. Rul-lan permanent alimony is the sum of $4,500.00 per month retroactive to July of 1994.

■ The party opposing the dischargeability of a debt has the burden of proving the debt falls within the limited exceptions found in section 523(a). Bybee v. Geer (In re Geer), 137 B.R. 37, 39 (Bankr.W.D.Mo.1991); Hall v. Hall (In re Hall), 119 B.R. 272, 277 (Bankr.M.D.Fla.1990). Based upon the evidence before me defendants have not met their burden, and I cannot find that the fees are in the nature of support.

The Maryland Court made no findings concerning Mrs. Rul-lan's need to have her attorney's fees paid for her, given that she was being awarded $4,500.00 per month in alimony. The evidence, in fact shows that the expenses used by Mrs. Rul-lan to justify alimony of $4,500.00 per month include attorney's fees of $300.00 per month. Pl.Ex. # 4. The expenses listed on the statement filed with the Maryland Court by Ms. Carroll–Fisher, at the February 1995 hearing, total $4,900.00, including attorney's fees. Mrs. Rul-lan's total income, apart from alimony, was represented to be $200.00. Such figures were obviously misleading. As to the income, the evidence shows that Mrs. Rul-lan owns 1300 shares of Phillip Morris. No evidence was offered the Maryland Court as to its value, or the income it produces, but the Wall Street Journal reflects Phillip Morris common stock trading at approximately $75.00 per share. Wall St. J, Sept. 1, 1995, at C–5. If such stock produces only $200.00 per month income Mrs. Rul-lan should surely sell it and invest the proceeds at interest. Furthermore, although Mrs. Rul-lan acknowledged that she receives social security, no evidence was offered as to the amount, and the Maryland Court apparently did not consider such income in awarding alimony. As to the expenses, the list offered at the February, 1995, hearing in Maryland totalled $4,900.00. But at the June, 1994, hearing in Maryland the expenses had only totalled $3,610.00. Pl.Ex. # 3. The Maryland Court did not find that Mrs. Rul-lan is unable to pay her own attorney's fees. Pl.Ex. # 2 at 51. Indeed, the evidence indicates that, with the alimony awarded her, and the property held by her, she has the means to pay reasonable fees herself.

Ms. Carroll–Fisher testified in this Court that in the period prior to February, 1995, approximately ninety percent of the time her firm had spent on this file was spent on matters relating to alimony, not property division. She apparently has read those cases which hold that fees incurred in connection with a dischargeable property settlement are also dischargeable. See, e.g. Barac v. Barac (In re Barac) 62 B.R. 713, 718 (Bankr.E.D.Mo.1985); Cantor v. Lever (In re

---

6. I note that the Maryland Court, at Ms. Carroll–Fisher's request, made the fees payable directly to the attorneys and gave the attorneys judgment in their own favor, not Mrs. Rul-lan's favor. The prevailing view in this district is that fees payable to the attorney, as opposed to the spouse, are not made nondischargeable by section 523(a)(5). Holliday v. Kline, 174 B.R. 525 (Bankr.W.D.Mo.

1994). Apparently mindful of that precedent, Ms. Carroll–Fisher testified in this Court that the judgment was really in favor of Mrs. Rul-lan, and not the attorneys, even though both the transcript and judgment provide otherwise. In any event, I find that the pre-petition attorney's fees are dischargeable whether owing to Mrs. Rul-lan or her counsel.

*Lever)*, 137 B.R. 243, 246 (Bankr.N.D.Ohio 1992). The evidence apart from her testimony, however, does not support her contention. The billing statements are vague as to work performed. And, the bulk of the hearing in February 1995 was take up first with convincing the Maryland Court to hear the case when Dr. Rul-lan was not present or represented, and second with identifying his assets. In any event, since the Maryland Court did not find that Mrs. Rul-lan was incapable of paying these fees, and indeed could not have so found based on the evidence offered, I find that the pre-petition fees are dischargeable.

An Order consistent with this Memorandum Opinion will be entered this date.