### In re Donald A. TOPPER, Debtor.

### Thomas CONES

### v.

### Donald A. TOPPER and Daniel O'Connell, Trustee.

### Bankruptcy No. 96–48619–H2–13.

United States Bankruptcy Court, S.D. Texas, Houston Division.

March 3, 1997.

J. Mark Davis, Minor & Davis, PLLC, Houston, TX, for Thomas P. Cones.

Aaron Keiter, Cease & Keiter, P.C., Houston, TX, for Donald A. Topper.

### MEMORANDUM DECISION

RANDOLPH F. WHELESS, Jr., Bankruptcy Judge.

This is a contested matter under B.R. 9014 in which Thomas P. Cones ("Cones") sought the determination that certain interests in shares of stock in Gulf Coast Pipeline Company ("Gulf Coast") scheduled by Donald A. Topper ("Topper") in his Chapter 13 case were not property of the estate under 11 U.S.C. § 541, and an order be granted for turnover of the Gulf Coast stock to Cones as the person having rights in that stock. This proceeding is a core matter under 11 U.S.C. § 157 and the Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334; venue lies in this Court under 28 U.S.C. § 1409.

Topper is a debtor in a Chapter 13 case commenced on September 23, 1996. Daniel E. O'Connell was duly appointed the Chapter 13 trustee in this case.

In his sworn schedules of property interests and liabilities filed in the Chapter 13 case, Topper claimed an interest in 50,000

shares of Gulf Coast having a value of $250,-000. [Cones Exhibit 7]. Gulf Coast is a Texas corporation formed in May 1993. [Cones Exhibit I]. Gulf Coast is now a debtor in a Chapter 11 case, case no. 96–447722–H3–11, styled *In re Gulf Coast Pipeline Company*, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. This contested matter was brought on as an emergency matter because the existing management had resigned, the corporation was to appear in Court within the week on a disclosure statement hearing and the shareholders had deadlocked as to new management.

At the time of the formation of Gulf Coast, the shareholders adopted organizational resolutions by unanimous written consent. Under the resolutions, 50,001 shares of $.01 par value common stock were issued to Cones and 50,000 shares of $.01 par value common stock were issued to Topper.[1] The stock was issued on or about July 1993, and in September 1993 both Cones and Topper paid Gulf Coast at least $250 cash consideration for the stock. [Cones Exhibit 2 and 15]. Cones testified that he had advanced the corporation in excess of $16,000, which funds capitalized the corporation.

Topper testified that he did not acquire the stock until 1994 when he tendered a cashier's check in the amount of $500 to Gulf Coast. Topper could not identify the person to whom he delivered the cashier's check and did not introduce into evidence the cashier's check, the bank receipt for the check, or a receipt from Gulf Coast, for such a payment. Topper's testimony concerning such a payment and cashier's check was not creditable.

■ Nonetheless, as of May 1993, the date of the organization of Gulf Coast, Topper owned 50,000 shares of stock of Gulf Coast or owed the right to acquire those shares, and by September 1993 had paid Gulf Coast at least $250 for such stock. During 1993 Topper was married to Tammy Louise Gagliano ("Gagliano") who was at that time seeking a divorce from Topper in Cause no. 93–048674, styled *In re the Marriage of Tammy Louise*

*Gagliano and Donald A. Topper*, in the 257th Judicial District Court of Harris County, Texas ("the Divorce Court"). Topper's interest in the Gulf Coast stock or the right to acquire such stock arose in 1993 and presumptively constitutes community property in the absence of creditable proof that such interest was separate property. Tex. Fam. Code § 5.02 (Vernon). Topper offered no credible evidence to rebut the presumption; in fact, the preponderance of the evidence is otherwise, and the Court finds that such interests were the community property of Gagliano and Topper.

Topper attested to the ownership of such stock or rights in an IRS Form 2553 filed with the Internal Revenue Service in September 1993. [Cones Exhibits 13 and 16.] The form is an election by Gulf Coast for treatment under sub-Chapter S of the Internal Revenue Code. [Cones Exhibits 13 and 16.] Cones and Topper, the shareholders, signed the Form 2553 which stated the number of shares of stock owned; in the case of Topper, the number of shares stated to be owned was 50,000 shares.

The corporation's accountant, Al C. Orosco, testified that the original IRS Form 2553 was returned by the IRS with instructions that the corporation obtain the signatures of persons having a community property interest in the stock or designate the owner of the stock as single; such signatures or designations should be made by the shareholders and the form returned to the IRS by the corporation. In the form delivered to the IRS, Topper's marital status is stated as "single." While Cones knew that Topper was married, he also knew that Topper's marriage was troubled; Cones testified that he did not write the word "single" next to Topper's name and that when he signed the Form 2553 as the president of the corporation, the word was not present. Cones' wife, Nancy Cones, testified that when she signed the form, the word was not written next to Topper's name, that she did not write the word "single" next to his name, and she returned the form to the corporation with

1. Subsequently Gulf Coast redeemed I share from Cones, reducing his interest to 50,000 shares.

her signature. Although Topper testified that he did not write the word "single" on the IRS form, he had no explanation for that description being on the form. His wife's name and signature did not appear on the form. The Court finds that Topper described his martial status as "single" on the IRS Form 2553, notwithstanding that Gagliano's divorce from him was not then final. [Cones Exhibit 13 and 16; Exhibit 6.]

The divorce between Gagliano and Topper was made final in a Final Decree of Divorce heard on January 3, 1994, and signed by the Divorce Court on January 26, 1994. [Cones Exhibit 6.] The divorce decree awarded custody of the children of the marriage, provided for possession of the children, ordered support for Gagliano as the former spouse and for the children, and divided the marital property between Gagliano and Topper. No provision in the final decree of divorce specifically divided the 50,000 shares of Gulf Coast stock, although specific disposition is made of other assets.

The attorney for Gagliano in the divorce case testified that he had not been informed of the Gulf Coast stock by Topper or Topper's attorney; the existence of the stock was not known to Gagliano, either. In the regular course of his practice of family law, Gagliano's attorney required a sworn inventory from the opposing spouse and included in the divorce decree a catchall provision for disposition of all undisclosed community property. The catchall provision was included in the Gagliano–Topper divorce decree and provided as part of the division of the estate of Gagliano and Topper that

> any community property or its value not otherwise awarded by this Decree is awarded fifty-percent (50%) to the spouse not in possession or control of the property.

> \*　　\*　　\*　　\*　　\*　　\*

*Transfer And Delivery Of Property*

IT IS FURTHER ORDERED AND DECREED that DONALD ALLEN TOPPER and TAMMY LOUISE GAGLIANO shall execute all instruments and closing documents necessary to effectuate the terms of this Final Decree of Divorce.

The inventory provided to Gagliano's attorney by Topper was not signed nor was it sworn to, although a representation was made that the inventory as sworn to had been filed with the Divorce Court. There was no evidence that Topper actually filed an original sworn inventory and it is likely that he did not file such a sworn statement.

Topper testified, however, that he had informed both Gagliano and her attorney about the 50,000 shares of Gulf Coast stock. The Court finds this testimony to be an absolute lie. The Court finds that Topper was not creditable as a witness, was not worthy of belief under oath and had testified falsely during his testimony on the two days that this contested matter was heard. Topper intended to defraud his wife in connection with her property rights in the Gulf Coast stock and failed to disclose to her or to her attorney the existence of the stock; Topper signed the IRS Form 2553 falsely, describing his marital status as "single" when he was in fact still married to Gagliano.

■ Under the Final Decree of Divorce, one-half of Topper's interest in the Gulf Coast stock, whether 25,000 shares validly issued, or 25,000 shares validly issued with the right to tender another $250 for the remaining 25,000 shares, belonged to Gagliano as of the effective date of the divorce decree, and are not property of the estate of Donald A. Topper under 11 U.S.C. § 541. Even under Topper's presentation of the facts, Gagliano would be entitled to one-half of the stock because Topper had the right to acquire the stock in 1993 and he never disclosed that fact, to her or to her attorney. Topper's testimony before this Court to the effect that he had made such disclosure is false.

In September 1996, Gagliano sold and assigned her interest in and to the Gulf Coast stock to Cones under an irrevocable voting proxy, an irrevocable stock option and stock purchase agreement. As such, Cones holds the rights in and to the Gulf Coast stock awarded to Gagliano under the Divorce Decree and is entitled in her stead to the stock.

■ Section 541 does not apply to those instances where property which ostensibly

belongs to the debtor is, in reality, held by the debtor in trust for another. "Because the debtor does not own an equitable interest in the property he holds in trust for another, that interest is not property of the estate." *Begier v. Internal Revenue Service*, 496 U.S. 53, 59, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990); *In re Unicom Computer Corp.*, 13 F.3d 321 (9th Cir.1994) (property held by the Debtor in trust for another is neither property of the estate under Section 541(a)(1) nor property of the Debtor under Section 541(b)(1)); *Bush v. Taylor*, 912 F.2d 989 (8th Cir.1990) (when a Debtor's ex-spouse was awarded a share of the Debtor's pension as her "sole property" under the terms of a state court decree dissolving the parties' marriage, the ex-spouse's claim for post-petition arrearages is not discharged by the bankruptcy, as the ex-wife's share is held by the Debtor in a constructive trust).

Since Topper was entitled only to one-half of the Gulf Coast stock or the right to acquire such stock, the Court will order that Topper turnover the one-half of the Gulf Coast stock or rights which were the property of Gagliano under the Divorce Decree, and pending the turnover of such stock and rights, Topper, for himself or by and through his agents or proxies, shall not vote more than one-half of the 25,000 shares the Court finds were validly issued in consideration for the $250 Topper paid in September 1993. The Court will order that at the time of the turnover, Topper shall provide such instruments or written instructions as are necessary for Gulf Coast to cancel such stock and re-issue new stock in the name of Gagliano or her successors or assigns. Effective with such turnover, Gulf Coast shall refund to Topper one-half of the $250 consideration he paid. The stock in the name of Topper to be canceled and re-issued in the name of Gagliano or her successor or assigns shall be in the amount of 12,500 shares; Topper and Gagliano or her successors or assigns each shall then also be entitled to exercise their rights to one-half of the other 25,000 shares by each tendering $125 to Gulf Coast and performing such other conditions as may be required to the issuance of the remaining stock. If and only if Topper can provide Gulf Coast a true copy of the cashier's check in

the amount of $500 which he testified he had paid to Gulf Coast in 1994 for the issuance of the 50,000 shares of Gulf Coast stock, then the amount of stock to be canceled and re-issued to Gagliano or her successors or assigns shall be 25,000 shares and Topper shall be entitled to a refund of $250 from Gulf Coast.

This memorandum decision constitutes the Court's findings of fact and conclusions of law under Bankruptcy Rules 7052 and 7054. A separate order has been entered.