Susan Gail ELLIS,
Petitioner/Respondent,

v.

Ronald Allen ELLIS,
Respondent/Appellant.

No. 57968.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 22, 1991.

David B. Lacks, Daniel P. Card II, Leigh Joy Carson, St. Louis, for respondent/appellant.

Mark Kruger, Randall B. Kahn, St. Louis, for petitioner/respondent.

REINHARD, Presiding Justice.

Husband appeals from the provisions of a dissolution decree dividing the marital property and awarding wife attorney's fees, maintenance, and child support. We affirm as modified.

Husband and wife married in December, 1970, and separated for the final time in 1988. This case was tried in November, 1989 when the husband was 42 and the wife was 40. The marriage produced three children, ages 18, 12 and 9. The husband had been in the wholesale shoe business most of his adult life. For the past several years he had been a member of the upper-level management in the companies for which he worked, and often earned yearly salaries in excess of $150,000. In 1987,

husband organized Vantage Footwear, Inc. (hereinafter, Vantage) with Joe Paterno and John Hoeh. The shoes were manufactured in Taiwan at Tai–Shoe Manufacturing Company, where Mr. Hoeh is a shareholder. They were then purchased by Vantage who sold them in the United States to retailers. Husband had a pension and profit-sharing plan from his previous employment which he rolled over into a pension and profit-sharing plan with Vantage Footwear, Inc. As trustee and sole beneficiary of that plan, he exchanged approximately $364,000 cash held by the plan for 34.7% of Vantage stock.

Both husband and Paterno were salaried officers in Vantage. Husband was president and chief operating officer. His beginning salary was $150,000 and his tax return for 1987 showed an income of $217,-000. When the case was filed in July, 1988, his salary was $150,000. In August his salary was reduced to $95,000, then to $65,-000, and $25,000 just prior to trial.

The evidence revealed that the family's high standard of living included ownership of many expensive automobiles and a high priced home, frequent travel, and membership in exclusive organizations. There was extensive testimony concerning the financial condition of Vantage from the company's controller, the company's CPA, and the husband. Most of this evidence revealed that Vantage was new, had very good sales, a large inventory and a huge debt.

The court dissolved the marriage, granted general custody of the children to wife, ordered husband to pay wife $2,250 maintenance, and child support in the amount of $650 per child. In addition, husband was ordered to pay wife's medical and dental expenses for three years and the children's until they reach majority. The court also divided the marital property, and ordered the husband to pay numerous marital bills and hold wife harmless from them. The pension and profit-sharing plan was set off to the husband with the following order: "Respondent is awarded his pension and profit-sharing plan with Vantage Footwear, Inc. subject to Petitioner's interest in said

plan." As her share of the parties' marital property, wife was awarded $300,000:

> to be paid to her by [husband], as her interest in [husband's] pension and profit-sharing plan with Vantage Footwear, Inc., and [husband's interest in] Vantage Footwear, Inc. Said award shall be deemed a judgment lien against husband's interest in said plan and his interest in the stock of Vantage Footwear, Inc., which is held in or by said plan.

In addition, wife's attorneys were awarded a judgment for their fees.

■ We must affirm the trial court's judgment unless it is unsupported by substantial evidence, unless it is against the weight of the evidence, or unless it erroneously applies or declares the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

We also give due regard to the trial court's ability to judge the credibility of the witnesses, as required by Rule 73.01(c)(2). When sitting as the trier of fact, the trial court may believe all, part or none of the testimony of any witness. *Trenton Trust Co. v. Western Surety Co.*, 599 S.W.2d 481, 483 (Mo. banc 1980). We note that husband did not request specific findings from the trial court, and thus under Rule 73.-01(a)(2) we shall consider all fact issues as having been found in accordance with the result reached.

■ Husband claims that the award of $2,250 maintenance and $1,950 total child support is an abuse of discretion because these amounts "are in excess of husband's ability to pay." He makes no challenge as to the proof of reasonable needs of his wife or the children. One factor to be considered in the amount of maintenance and child support is the husband's financial resources and ability to pay. § 452.335.2(3), RSMo Cum.Supp.1990; § 452.340.1(2), RSMo Cum.Supp.1990. Husband's present salary is not determinative of his ability to pay. The court may consider husband's past, present and anticipated earning capacity. *Goodwin v. Goodwin*, 746 S.W.2d 124 (Mo.App.1988).

Husband's salary at Vantage went from $150,000 in 1988 to $25,000 shortly before

the trial of this case. Wife testified that husband told her he would lower his salary and hide his money in Switzerland, and she testified that he had counseled others to do the same. The evidence further indicated that husband had control over his salary. The timing of husband's salary reduction, coupled with his threat to do so, provides further support for the trial court's implicit finding that husband's earning capacity could support the size of the trial court's award.

Furthermore, there was evidence that husband may have had other assets available to him. In 1984, husband claimed partial ownership of several companies which gave him a net worth of over $863,-000. Although husband sold many assets, in some cases for as little as $1.00, wife testified that husband told her he had secret agreements with his brother and other business associates which would allow him *to retain ownership of his investments.*

We note that wife has custody of the children and does not have use of the family home, which was sold by foreclosure sale when husband refused to make the payments. She cannot fully provide for their needs alone, as she had only two years of college education, did not work during the marriage at husband's insistence, and at the time of trial made $82.50 per week. Although there was non-medical testimony that husband had recently undergone heart bypass surgery, the evidence also indicated that husband had earned at least $150,000 annually for the last ten years. A review of the entire record leads us to the conclusion that the trial court did not abuse its discretion in the award of maintenance and child support.[1]

■ Husband also contends the trial court abused its discretion in awarding $300,000 to wife as her interest in husband's pension and profit-sharing plan. Husband argues that the only credible evidence presented at trial indicated that the plan had only nominal value, except "wife's valuation of husband's interest in the plan at $10–12 million dollars in her statement of property." We disagree. The testimony indicated that in October, 1987, the husband invested approximately $364,000 from the plan in shares of Vantage. Initially we note that pension plans divided as marital property by the appellate courts of this state have generally complied with IRS guidelines and involved assets that were easily valued by market value or because they held fixed assets. Here, the pension and profit-sharing plan holds 34.7% of the stock in a closely held corporation. The assets of the plan are difficult to value; however, husband is a substantial factor and force in controlling its value, as he is president of the corporation and one-third owner.

Husband argues that wife's valuation should be given no weight because she was not the owner, but husband admits that the pension and profit-sharing plan is marital property. Our courts have readily accepted the valuation of a marital asset by the spouse much as an owner's testimony at trial as to the value of property. In any event, however, we believe there is other evidence that supports the trial court's determination that the plan has a value in excess of $300,000. The testimony indicated that in October, 1987, the husband invested approximately $364,000 from the plan in 34.7% of the shares of Vantage. Although at first Vantage failed to make a profit, the corporation's CPA testified that Vantage had taken steps to stem the losses. He further testified that, as of March of 1989, based on information given to him by husband and other principals he expected the company to finish its fiscal year in 1991 with retained earnings of $2,558,000. He noted that Vantage had over $1,000,000 in collectible receivables and an inventory valued at $1,250,000.

■ Husband also argues that because of the uncertainty of the value of the plan,

1. Husband also claims the trial court failed to comply with Rule 88, which provides that there is a rebuttable presumption the amount of child support is correct if the amount is calculated pursuant to Civil Procedure Form 14. How- ever, this rule became mandatory on April 1, 1990 subsequent to the trial court's Decree dated November 29, 1989 and Amendment to the Decree dated February 7, 1990.

the court should have divided ownership of the pension plan between the parties. In many cases such a division is proper. The trial court in *In re Marriage of W.E.F. vs. C.J.F.*, 793 S.W.2d 446 (Mo.App.1990) did just that in the distribution of a note to "minimize the risk of an inaccurate valuation." In light of the evidence here, including the control that husband has over the pension and profit-sharing plan's future value, we conclude that the court's disposition was proper. We further find no error in imposing a lien of that amount upon the plan.

■ Husband also contends that the court erred in failing to order payment over a period of time. We conclude that under the circumstances here, especially in view of the possible tax consequences, the order of payment should be modified and amended as follows since the value of the plan would be substantially reduced if liquidated at one time:

The $300,000 to be paid as follows: $50,-000 due on July 1, 1991 and $50,000 due on January 1, 1992, and like payments every six months until the amount is paid in full. In addition, the unpaid balance shall bear interest at the rate of 9% per annum in accordance with § 408.040 RSMo, Cum.Supp.1990, with the interest due and payable on the principal payment dates.

Husband also contends that the trial court erred in several respects in its order directing him to pay wife's attorney's fees. His contention that the amount awarded constitutes an abuse of discretion because of his inability to pay is without merit and we believe sufficiently answered in our discussion of the award of maintenance and child support. However, his contention that the court erred in awarding $10,000 to Allan Zerman, one of his wife's attorneys, has merit. Zerman testified that he was only requesting a judgment for $3,640, as he had already received a judgment for $7,000 during the pendente lite hearing. The pendente lite award is a separate judgment. *Dardick v. Dardick*, 661 S.W.2d 538, 540 (Mo.App.1983). The award of attorney's fees apparently fails to take into

account the pendente lite award. The parties have admitted to this court that the trial court erred in making the $10,000 award in the dissolution case. Thus we hereby amend and modify that portion of the judgment that awarded attorney's fees to Allan Zerman in the amount of $10,000 to an award of $3,640. Husband also contends that the court erred in designating all the attorney's fees in this case as maintenance, and we agree. An award of attorney's fees is separate from and should not be considered maintenance. *In re Marriage of Jadwin*, 671 S.W.2d 9 (Mo.App. 1984). Thus we amend that portion of the award and modify by striking the characterization of the award of attorney's fees as maintenance.

Judgment affirmed as modified.

STEPHAN and CRANE, JJ., concur.