_____

No. 95-1020
_____

In re:  Ronald Ellis,            *
                                 *
          Debtor.                *
                                 *
_____  *
                                 *
Susan Ellis,                     *  Appeal from the United States
                                 *  District Court for the Eastern
          Appellee,              *  District of Missouri.
                                 *
     v.                          *
                                 *
Ronald Ellis,                    *
                                 *
          Appellant.             *

_____

          Submitted:  May 18, 1995

               Filed:  December 18, 1995
_____

Before BOWMAN, MAGILL, and LOKEN, Circuit Judges.

_____

BOWMAN, Circuit Judge.


     Ronald Ellis appeals from the decision of the District Court
affirming the Bankruptcy Court's decision holding nondischargeable in
bankruptcy a $300,000 obligation Ronald owed to his former wife Susan Ellis
by virtue of a dissolution decree.  We reverse.


     Susan and Ronald Ellis were divorced in November 1989.  At issue here
is paragraph 1 of the attachment to the Ellises' Decree of Dissolution,
which reads as follows:

> As and for her partial share of the parties' marital property, Petitioner [Susan] is awarded Three Hundred Thousand Dollars ($300,000.00) to be paid to her by Respondent [Ronald], as her interest in Respondent's pension and profit sharing plan with Vantage Footwear, Inc., and Vantage Footwear, Inc. Said award shall be deemed a judgment lien against Respondent's interest in said plan and his interest in the stock of Vantage Footwear, Inc., which is held in or by said plan. Respondent shall execute a Qualified Domestic Relations Order consistent with this Decree and the Court retains jurisdiction thereof.

On February 7, 1990, the above language was modified, for reasons not in the record, on Ronald's motion to alter and amend the judgment. The only change of substance was the deletion of the last sentence requiring Ronald to execute a Qualified Domestic Relations Order (QDRO).

In an opinion filed January 22, 1991, the Missouri Court of Appeals found that the $300,000 award was not an abuse of discretion. Ellis v. Ellis, 802 S.W.2d 546, 549 (Mo. Ct. App. 1991). The court of appeals modified the award, at Ronald's request, so that $50,000 was to be paid to Susan on July 1, 1991; thereafter, every six months, Ronald was to pay Susan $50,000 plus interest "until the amount is paid in full." Id. The court apparently took this action after being persuaded by Ronald of "possible tax consequences," and that "the value of the plan would be substantially reduced if liquidated at one time." Id. On June 7, 1991, less than one month before the first payment was due, Ronald filed a voluntary petition in bankruptcy. On October 11, 1991, Susan filed this adversary proceeding challenging the dischargeability of various obligations Ronald owed to her pursuant to the dissolution decree (including his maintenance and child support obligations, which Ronald had listed as dischargeable debts), arguing they were not dischargeable as they were in the nature of maintenance and support.

On January 28, 1993, the Bankruptcy Court held that the $300,000 award to Susan was a property settlement not intended as support, and therefore was a dischargeable debt in Ronald's bankruptcy. On February 24, 1993, Susan filed a "Motion for Leave to Alter or Amend Court's Judgment"[1] or, alternatively, leave to file a late notice of appeal. Susan's attorney averred that she did not receive the Bankruptcy Court order from the court, and only learned of it on February 11 from opposing counsel. She asked the court for leave to file a motion to alter or amend the judgment outside the ten-day limit set forth in Federal Rule of Civil Procedure 59(e) (made applicable in the bankruptcy courts by Bankruptcy Rule 9023). On April 15, the court granted Susan leave to file an untimely motion to alter or amend, relying on Federal Rule of Civil Procedure 60(b) (made applicable in the bankruptcy courts by Bankruptcy Rule 9024) and finding that excusable neglect explained her tardy filing. In the same order, the court extended the time within which Susan could file her notice of appeal. In a separate order filed on the same day, the Bankruptcy Court amended its judgment and held that the $300,000 Ronald owed to Susan was nondischargeable under the law as set forth in this Court's opinion in Bush v. Taylor, 912 F.2d 989 (8th Cir. 1990) (en banc). The District Court affirmed. Ronald Ellis appeals.

For his first issue on appeal, Ronald Ellis contends that the Bankruptcy Court abused its discretion by reopening its judgment pursuant to Federal Rule of Civil Procedure 60(b), and that the District Court erred in affirming that decision. He focuses his argument on the rules concerning a motion for leave to file a late

---

[1] Presumably, the caption of the motion was inaccurate. Susan did not seek leave to alter or amend the judgment; only the court could alter or amend its own judgment. She states in paragraph 4 of her motion that she wanted leave to file an untimely motion to alter or amend under Rule 59(e) (Rule 59(e) motions are required to be filed within ten days of entry of the judgment) and, in case the court granted the motion for untimely filing, she included the motion to alter or amend and her arguments on the merits.

-3-

notice of appeal, arguing that the court's decision under Rule 60(b) effectively granted Susan an appeal. That argument misses the mark. The real procedural issue is the court's use of Rule 60(b) as a vehicle to overcome the untimeliness of Susan's Rule 59(e) motion to alter or amend. Susan's motion for leave to file a notice of appeal out of time was granted in a separate ruling, but became irrelevant when the Bankruptcy Court amended its judgment so as to find in Susan's favor on the merits of the dischargeability question.

As the Bankruptcy Court noted, enlargement of the ten days allowed for filing a Rule 59(e) motion to alter or amend the judgment, regardless of the reason, is expressly prohibited by Bankruptcy Rule 9006(b)(2). The court also rejected Susan's argument that "unusual circumstances" excused her failure to file her motion within ten days.[2] The court therefore was without jurisdiction to consider Susan's Rule 59(e) motion. See Townsend v. Terminal Packaging Co., 853 F.2d 623, 624 (8th Cir. 1988). But the Bankruptcy Court then turned to Rule 60(b), which allows a reasonable time (but not more than one year) within which to file a motion for relief from judgment based on excusable neglect, and

---

[2]For its authority to consider Susan's claim of "unusual circumstances," the Bankruptcy Court relied on the judicially-created doctrine pursuant to which a court may allow the filing of an untimely notice of appeal, where the filing is untimely because of reasonable reliance on the erroneous actions of the court. We do not decide whether this doctrine is applicable to an untimely Rule 59(e) motion to alter or amend a judgment. Cf. Thompson v. INS, 375 U.S. 384, 387 (1964) (per curiam) (holding that lower court's representation that Rule 59(b) motion for new trial was timely, when it was not, constituted "unique circumstances" to excuse untimely notice of appeal); Osterneck v. Ernst & Whinney, 489 U.S. 169, 179 (1989) ("By its terms, Thompson applies only where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done."). The question is of no moment here, as the court found no "unusual circumstances" existed to excuse Susan's untimely filing of her Rule 59(e) motion.

found the requisite excusable neglect for Susan's failure to make timely post-judgment motions.

In the context of excusable neglect as a ground for relief from a judgment or order, Rule 60(b) is appropriately invoked to offer excuses for neglect leading up to the judgment in the first place, not excuses for neglect for failure to file post-judgment motions to alter or amend. Sanders v. Clemco Indus., 862 F.2d 161, 168 n.14 (8th Cir. 1988); see, e.g., In re Freightway Corp., 170 B.R. 108 (Bankr. N.D. Ohio 1994) (seeking reconsideration under Rule 60(b) of order denying creditor's claim for failure of creditor to appear); In re King, 165 B.R. 296 (Bankr. M.D. Fla. 1994) (seeking rehearing under Rule 60(b) for order granting motion to value collateral where creditor failed to respond); Elliot v. Hancock (In re Hancock), 160 B.R. 677 (Bankr. M.D. Fla. 1993) (seeking relief under Rule 60(b) from default judgment entered when no answer was filed); cf. In re Gray, 156 B.R. 707 (Bankr. D. Maine 1993) (holding creditors could not attack debtor's discharge as it applied to them by characterizing motion as under Rule 60(b) where procedure to challenge discharge was provided by statute); In re Bowden, 138 B.R. 584 (Bankr. E.D. Ark. 1992) (assuming that motion seeking reinstatement of bankruptcy case that was dismissed after debtors' failure to file the required documents was made pursuant to Rule 60(b)); In re Fuller, 111 B.R. 660 (Bankr. S.D. Ohio 1989) (assuming that motion seeking reinstatement of automatic stay where debtor failed to file responsive pleading to motion for relief from stay was made pursuant to Rule 60(b)). A Rule 60(b) motion alleging excusable neglect is appropriately used when seeking relief from judgment for excusable neglect, not when seeking relief from the deadlines set by the rules for post-judgment motions, even if those deadlines are not met because of excusable neglect. Contrary to Susan's arguments, Pioneer Investment Services v. Brunswick Associates Limited Partnership, ___ U.S. ___, 113 S. Ct. 1489 (1993), is inapplicable to this case. The issue in that case was the interpretation of the term "excusable neglect" in a case

-5-

where a creditor failed to timely file a proof of claim.  <u>Pioneer</u> had nothing to do with deciding whether excusable neglect under Rule 60(b) can be used to grant leave to file an untimely motion to alter or amend, which implicates Rule 59(e).

We hold that the Bankruptcy Court was without jurisdiction to consider Susan's Rule 59(e) motion (and we note that the court, in at least a formal sense, did reject that motion).  We further hold that the Bankruptcy Court erred in relying upon Rule 60(b) to grant Susan leave to file an untimely motion to alter or amend the judgment, and the District Court erred in affirming that decision.  We need not and do not consider what now becomes of the Bankruptcy Court's order granting Susan's motion to file her notice of appeal out of time because the issue is moot, and has been since the entry of the amended judgment in Susan's favor, issued the same day as the ruling on her motion for leave to file an untimely Rule 59(e) motion, made it unnecessary for her to appeal.  Instead, the appeal to the District Court from the amended judgment was taken by Ronald.

We conclude that Ronald is correct that the amended judgment must be reversed for the procedural reasons we already have discussed.  Moreover, even if we are mistaken in our conclusions as to the convoluted procedural history of this case, our resolution of the case on the merits of the dischargeability question results in judgment for Ronald in any case.[3]

Relying on our opinion in <u>Bush v. Taylor</u>, the Bankruptcy Court summarily reversed its original decision adjudging Ronald's

---

[3]Because of our resolution of the procedural question, and our alternate holding on the merits of the dischargeability question, we do not consider Ronald's argument that the Bankruptcy Court abused its discretion in altering its judgment based on a legal theory (derived from <u>Bush v. Taylor</u>, 912 F.2d 989 (8th Cir. 1990) (en banc)) that was raised for the first time in Susan's motion to alter or amend.

-6-

$300,000 obligation dischargeable.  The District Court, in its <u>de novo</u> review and affirmance, elaborated somewhat, concluding that the installment payments for the $300,000 obligation were debts not incurred until payment was due, and thus were not dischargeable under <u>Bush</u>.  After our own <u>de novo</u> review, we find that we must disagree with the application of <u>Bush</u> by the lower courts in this case.

In <u>Bush</u>, the debtor, pursuant to a decree of dissolution entered before the days of QDROs, was required to pay a portion of his pension benefits, as he received them, to his former wife as her "sole and separate property."  The district court, affirming the bankruptcy court, refused to discharge the obligation in the debtor's bankruptcy proceedings.  This Court affirmed, holding that the obligation was not pre-petition debt dischargeable in bankruptcy.  Instead, we held, the amount due was the former wife's "sole and separate property," to be paid to her by the debtor only because the pension plan administrator did not pay her share of the pension to her directly.  Moreover, as we noted, the pension payments would continue to flow to the debtor for as long as he lived, and if his obligation to pay his former wife a portion of these payments as he received them were discharged in bankruptcy, she thereby would be deprived of the "sole and separate property" in these payments that the state divorce court had awarded her.

Here, Susan was not awarded a fixed share of payments to be received by Ronald from his employer's pension and profit sharing plan as her "sole and separate property," as was the case in <u>Bush</u>.  Instead, the divorce court awarded Susan a sum certain that represented her "interest" in the plan and in Vantage Footwear, but it was not in any way linked to pension or profit-sharing payments to be received by Ronald.  If the amount was to have been more than a division of property, that is, if it was based on actual payments

due Ronald from an ERISA-regulated[4] pension and profit-sharing plan, then a QDRO should have and presumably would have been executed. But the installment payments owed to Susan were not Susan's "sole and separate property" payable by Ronald only when he received payments from his company's plan. Rather, the $300,000 was a division of marital property representing the divorce court's determination of Susan's present interest in the pension and profit-sharing plan and in the company itself. It was owed to Susan regardless of any later changes in the value of the plan or of the company.[5]

Ronald prevailed upon the Missouri Court of Appeals to modify the award to make it payable in installments, evidently convincing the court that modification was necessary to protect the plan assets. Ronald filed his bankruptcy petition before any of the court-ordered payments to Susan became due. But the installment payments did not become post-petition debt merely because the dates of payment had not yet arrived. Unlike Bush, in which the former husband became obligated to pay over his former wife's portion of his pension checks only as he received them, Ronald's obligation to Susan was merely unmatured debt. Ronald owed those amounts to Susan whether or not he ever received a nickel from the pension and profit-sharing plan or from his interest in the company. The record does not indicate that he was even drawing--or eligible to draw--any funds from the plan at the time his marriage to Susan was dissolved. We therefore must conclude that Susan's interest in the plan and the company was reduced to an amount certain that Ronald

---

[4]Employee Retirement Income Security Act, Pub. L. No. 93-406, 88 Stat. 829 (codified as amended at 29 U.S.C. §§ 1001-1461 (1988 & Supp. V 1993), and in scattered sections of the United States Code).

[5]Susan's lien on Ronald's interest in the pension and profit-sharing plan and Vantage Footwear stock, created by the explicit language of the divorce decree, is unaffected by our decision today. The record indicates, however, that the plan and the stock are now worthless.

was obligated to pay to her from whatever assets he had, and thus is a pre-petition debt that, not being in the nature of maintenance and support for his former wife, <u>see</u> 11 U.S.C. § 523(a)(5) (1994), is dischargeable in bankruptcy, <u>see</u> <u>id.</u> § 727 (1994) (pre-petition debts shall be discharged); <u>id.</u> § 101(5), (12) (defining debt and claim under the Bankruptcy Code).

The judgment of the District Court is reversed.

A true copy.

      Attest:

             CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.