**In re Joseph W. WATFORD, SSN: 266–48–7534 and Doris F. Watford, SSN: 265–50–5822, Debtors.**

**Bankruptcy No. 87–70256.**

United States Bankruptcy Court,
M.D. Georgia,
Valdosta Division.

Jan. 26, 1996.

Richard J. Tuneski, Alpharetta, Georgia, for debtors.

Lillian H. Lockary, Asst. U.S. Attorney, Macon, Georgia, for U.S.

## MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

On December 7, 1995, the court held a hearing on Debtors' motion to reopen their Chapter 12 bankruptcy case. Debtors' attorney requested that the court reopen the case under § 350 of the Bankruptcy Code (hereinafter the "Code"), to allow the court to determine whether the amount of funds paid to the United States of America, acting through the Commodity Credit Corporation, an agency of the United States Department of Agriculture (hereinafter "CCC"), was in violation of the terms and intent of the consent agreement between Debtors and CCC, particularly with respect to the disposition of the interest which had accrued on the funds held in the registry of the court. The court granted the request of Debtors' attorney to submit a brief on the applicability of Federal Rule of Civil Procedure 60(b) to this matter. After consideration of such brief, CCC's response in the form of a motion to prohibit the reopening of Debtors' bankruptcy case and objection to Debtors' motion to reopen, as well as applicable law, the court, for the reasons indicated below, will deny Debtors' motion to reopen their bankruptcy case.

Debtors filed their Chapter 12 bankruptcy petition on July 28, 1987. CCC was listed as a secured creditor in Debtors' schedules. Debtors' attorney and CCC's attorney, acting on behalf of their respective clients, executed a consent agreement dated January 29, 1988, where the parties agreed to certain actions with respect to the sale of collateral, which agreement was approved by the court on February 2, 1988. The parties filed a second consent agreement with respect to the sale of that same collateral, which agreement was approved by the court on March 25, 1988. The court notes that the latter consent agreement is not significantly different from the earlier consent agreement. The court will consider the consent agreement approved by the court on March 25, 1988, as the agreement between the parties. The agreement indicates that $58,938.82 shall be deposited into the registry of the court until a final order on Debtors' pending appeal of the denial of their motion to use cash collateral is rendered. Should Debtors lose their appeal or the parties cease efforts on the appeal, the agreement indicates that the proceeds from the sale of collateral subject to CCC's lien shall be forfeited to CCC in full and final payment of Debtors' obligations to CCC, with any excess proceeds to be remitted to Debtors. The agreement between the parties is silent as to the disposition of any increase in the funds as a result of accrued interest. After Debtors' appeal was resolved by mandate of the Eleventh Circuit Court of Appeals (which mandate affirmed the order of the District Court which had affirmed this court's denial of Debtors' motion to use CCC's cash collateral), CCC, on August 13, 1992, filed a motion for a disbursement of "funds deposited into the registry of the court in the amount of $58,938.82, pursuant to the order of March 25, 1988, plus any accrued interest." Such motion includes two exhibits, one being a copy of the consent agreement between the parties which was approved by the court on March 25, 1988, and the other being an Affidavit of ASCS County Executive Director as to the Debt Currently Owed to the CCC. A telephone status conference was held on August 18, 1992, during which conference CCC's attorney agreed that the funds should be held in the registry of the court pending the outcome of Debtors' petition for certiorari. Debtors' attorney does not contend that during such conference, he questioned the language of CCC's motion or the proposed order with

respect to accrued interest or that the issue of the disposition of accrued interest was discussed. After the United States Supreme Court denied certiorari on October 19, 1992 with respect to Debtors' appeal of the cash collateral issue, this court, on October 20, 1992, entered the order authorizing disbursement of the funds from the registry of the court. Such order states that funds on deposit up to $88,310.41 shall be disbursed to the U.S. Department of Justice, on behalf of CCC. In accordance with such order, the clerk of the bankruptcy court, together with a transmittal letter dated October 26, 1992, sent to the U.S. Attorney's Office a check made payable to the U.S. Department of Justice in the amount of $80,540.55, which amount constituted all of the funds (including accrued interest), which had been held in the registry of the court after deduction of authorized fees to the court.

On December 15, 1992, the court held an emergency hearing on a request for an injunction by South Central Farm Credit, A.C.A., against Debtors, during which hearing Debtors were represented by their attorney. The funds being held in the registry of the court with respect to CCC's claim was discussed during the hearing, and Debtors' attorney questioned the disbursing of $80,-540.55 when the agreement with CCC indicated $58,938.82. The court indicated that the difference must be accrued interest. The court then checked the file, informed Debtors' attorney of the actual amount disbursed to CCC ($80,540.55), and stated to Debtors' attorney that he "would have to consider whether they are really entitled to that or not and bring it before the court if you feel that they are not. I would assume some sort of turnover action would be appropriate if they are not entitled to it." [1] Debtors' attorney indicated his appreciation to the court, and the discussion then proceeded to other issues.

On November 20, 1995, Debtors filed a Motion to Reopen Case in Order to Render a Declaratory Judgment with respect to the funds paid to CCC.

It is undisputed that Debtors did not timely appeal from the court's final order of October 20, 1992, and there was no stay pending appeal (there is no contention that the court's order is not a final order). According to Debtors' attorney, the court's order was never appealed due to "counsel error," and he pointed out that Debtors were involved with other pending litigation at that time. Debtors' attorney references Federal Rule of Civil Procedure 60(b) (which is made applicable to bankruptcy cases by Bankruptcy Rule 9024), as a basis for the court to relieve Debtors from the court's final order of October 20, 1992. Debtors' attorney believes that his failure to take timely action to appeal the court's order is excusable. Debtors request the court to reopen their bankruptcy case so that they may obtain relief from the order.

In addition, notwithstanding Federal Rule of Civil Procedure 60(b), Debtors' attorney cites the case of *Otte v. Manufacturers Hanover Commercial Corp. (In re Texlon Corp.)*, 596 F.2d 1092 (2nd Cir.1979), with regard to a bankruptcy court's authority to vacate or modify its orders. In *Texlon,* the bankruptcy judge signed an *ex parte* order containing a cross-collaterization provision, which allowed the debtor to obtain certain financing from MHCC. *Texlon,* 596 F.2d at 1094. The trustee moved to modify the order to provide that any equity in the collateral would be paid to all creditors and not toward the unsecured part of MHCC's debt. *Id.* at 1095. The bankruptcy court, agreeing that similar orders should not be entered in the future, nevertheless denied the motion due to reliance on the order by MHCC and the vesting of rights as a result of such reliance. *Texlon,* 596 F.2d at 1095. The district court on appeal reversed the bankruptcy court's order. *Id.* The creditor appealed to the Second Circuit Court of Appeals on the cross-collaterization issue and also argued that the financing order had become final and was non-appealable. *Id.* Judge Friendly decided that the trustee was entitled to prevail under the bankruptcy court's inherent powers described in *Wayne*

1. Excerpt from Transcript of December 15, 1992 Emergency Hearing on Motion of South Central

Farm Credit, A.C.A. for Injunctive Relief (Case No. 87–70256) (Bankr.M.D.Ga.).

*United Gas Co. v. Owens–Illinois Glass Co.,* 300 U.S. 131, 137, 57 S.Ct. 382, 386, 81 L.Ed. 557, 561 (1937), where the Supreme Court stated that a bankruptcy court could rehear an action even after the period allowed for appeal has expired, "if no intervening rights will be prejudiced by its action," and *Pfister v. Northern Illinois Fin. Corp.,* 317 U.S. 144, 63 S.Ct. 133, 87 L.Ed. 146 (1942), where the Supreme Court applied the same powers to the order of a conciliation commissioner, said to be the functional equivalent of a bankruptcy judge. *Id.* at 1100.

This court does not agree with the *Texlon* court's decision to allow the trustee to prevail in his challenge to the bankruptcy court's *ex parte* financing order. The *Texlon* court's reliance on the *Wayne* decision was misplaced as *Wayne* was decided (February 1, 1937), prior to the effective date of the Federal Rules of Civil Procedure (the original Federal Rules, pursuant to act of June 19, 1934, were adopted by order of the Supreme Court on December 20, 1937, transmitted to Congress on January 3, 1938, and became effective on September 16, 1938; by General Order in Bankruptcy 37, effective February 13, 1939, the Federal Rules were made applicable to bankruptcy proceedings when not inconsistent with the Bankruptcy Act or the General Orders; this was abrogated effective October 1, 1973, by the order promulgating the Bankruptcy Rules).[2] This court believes that the approach taken by the Seventh Circuit Court of Appeals is the correct one: the old inherent power to reconsider bankruptcy orders has been merged into the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure.[3] As stated by Judge Posner in *Gekas v. Pipin (In re Met–L–Wood Corp.),* 861 F.2d 1012 (7th Cir.1988),

*cert. denied,* 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989):

> [L]et us now consider whether his [trustee's] motion under Rule [F.R.Civ.P.] 60(b) to revoke the bankruptcy judge's approval of the sale was properly denied. There is a preliminary question. Long before there was a Rule 60(b), bankruptcy courts exercised what they conceived to be, and what in fact has traditionally been regarded as, an inherent judicial power to reconsider their judgments within a reasonable time, including judgments confirming sales. See 4B Collier on Bankruptcy ¶ 70.98[17], at pp. 1183–94 (14th ed. 1978). Now that there is a Rule 60(b), expressly applicable to bankruptcy as we have seen, the inherent power seems otiose; and although the cases continue to refer to it, they define it in terms of Rule 60(b). See, e.g., *In re Chung King, Inc.,* 753 F.2d 547, 549–50 (7th Cir.1985). As a natural development from those cases, as well from the text of Bankruptcy Rule 9024, which applies Rule 60(b) to bankruptcy proceedings, we hold that confirmed sales—which are final judicial orders—can be set aside only under Rule 60(b). We conclude that the old inherent power to reconsider bankruptcy orders has been merged into the rule.

*Met–L–Wood,* 861 F.2d at 1018[4]; *see also In re Wyciskalla,* 156 B.R. 579, 580 (Bankr.S.D.Ill.1993) (debtor's motion, filed over three years after discharge order entered, to reopen his case to revoke the discharge and dismiss the case was denied as court determined it was without statutory or equitable authority to do so); *In re Doty,* 129 B.R. 571, 583–586 (Bankr. N.D.Ind.1991) (where creditor filed motion

---

**2.** Although *Pfister* was decided in 1942 (after General Order in Bankruptcy 37), the opinion makes no mention of Federal Rule of Civil Procedure 60(b).

**3.** Whether or not it is deemed that *Wayne* and *Pfister* have survived, this court finds it significant that the Supreme Court in *Wayne* recognized the importance of the timeliness of a challenge to a court order:

> But we think the court has the power, for good reason, to revise its judgments upon *seasonable* application and before rights have vested on

the faith of its action.... [T]he rule which governs the case is that the bankruptcy court, if no intervening rights will be prejudiced by its action, may grant a rehearing upon application *diligently* made and rehear the case upon the merits. *Wayne,* 300 U.S. 131, 137–138, 57 S.Ct. 382, 385–386 (1937) (emphasis added).

**4.** The court is aware of the fact that some may question whether Judge Posner's remarks are dicta given the significant consideration of finality with respect to unappealed § 363 sales.

for interpretation of confirmed Chapter 11 plan and for determination of payments thereunder, the court's reconsideration power was controlled by the applicable Bankruptcy Rules and Federal Rules of Civil Procedure); *Etchin v. Star Services, Inc. (In re Etchin)*, 128 B.R. 662, 669–670 (Bankr.W.D.Wis.1991) (proceeding involved § 1322(b)(2) of the Code and lien stripping of a home mortgage which required the court to reconsider the confirmation of debtors' confirmed plans; "A bankruptcy court's power to reconsider an order is well-recognized and in the Seventh Circuit is guided by F.R.C.P. 60(b).").

■ This court believes that the power to reconsider its prior orders in bankruptcy cases is controlled by Bankruptcy Rules 7052, 9023 and 9024, applying Federal Rules of Civil Procedure 52, 59 and 60, respectively. Additionally, pursuant to Bankruptcy Rule 9006(b)(2), the court may not enlarge the time for taking action under Rules 7052, 9023 and 9024. Federal Rules of Civil Procedure 52 and 59 are inapplicable to the present case. Federal Rule of Civil Procedure 52(b) deals with amendment by the court of its findings or the making of additional findings, and the resulting amendment of a judgment. A motion for such action must be made not later than ten (10) days after entry of judgment. Federal Rule of Civil Procedure 59(e) deals with a motion to alter or amend which must be served not later than ten (10) days after entry of the judgment. Even if Debtors' case was reopened, this court would lack jurisdiction to consider a motion brought under either of these Rules since the dictated ten-day periods have long passed.

With respect to relief from judgment or order under Federal Rule of Civil Procedure 60, the court understands, as argued in Debtors' brief, that under Bankruptcy Rule 9024, the one-year limitation in Federal Rule of Civil Procedure 60(b) does not apply to a motion to reopen a case under the Code. The court is not concerned, however, with the timing of the filing of the motion to reopen Debtors' bankruptcy case. In the past, the court has been willing to reopen bankruptcy cases under § 350 of the Code if there is a justiciable issue or some relief can be granted. The court, however, is concerned that reopening Debtors' bankruptcy case will result in the expenditure of time, effort and money by Debtors to no avail, since the complaint for declaratory relief which Debtors plan to file will challenge an order of the court entered over three years ago. The timing of Debtors' effort to obtain relief from the court's order of October 20, 1992, is the relevant question. Debtors contend that relief could be granted under Federal Rule of Civil Procedure 60(b) upon a finding that the failure to timely appeal the court's order was excusable. According to Federal Rule of Civil Procedure 60(b), the court may relieve a party from a final order for excusable neglect, but the motion for such relief must be made within a reasonable time, and not more than one year after entry of the order.[5] Debtors' attorney, however, did not take any action to obtain such relief within the one-year period. In fact, the court's October 20, 1992 order was entered over three years before Debtors' motion to reopen their case to allow a challenge of such order was even filed with the court.

■ Debtors bear the burden of establishing proper grounds for relief. The parties entered into a consent agreement which was approved by the court on March 25, 1988. CCC's motion for disbursement of funds was filed on August 13, 1992. Debtors do not contend that the issue of the disposition of accrued interest was discussed during the August 18, 1992 telephone status conference. Funds were disbursed to CCC on or about October 26, 1992. During a hearing held on December 15, 1992, the court suggested that Debtors' attorney bring an appropriate action before the court after Debtors' attorney questioned the amount of funds which had been disbursed to CCC. It was almost three years before any such action was initiated. The time for bringing a motion for relief has long passed. Notwithstanding the procedural bar contained in Federal Rule of Civil Procedure 60(b), the court does not believe that the failure to timely challenge the court's order due to

5. Fed.R.Civ.P. 60(b).

"counsel error" or involvement with other pending litigation would constitute excusable neglect in this case. Many courts in fact consider it an abuse of discretion to set aside an order on the basis of attorney neglect. *See Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 173 (5th Cir.1990) (if failure of party to present evidence is attributable to carelessness or negligence of attorney, it would be an abuse of discretion for the district court to grant Rule 60(b) relief), *reh'g denied,* 920 F.2d 259 (5th Cir. 1990), *cert. denied,* —— U.S. ——, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993); *see also Engleson v. Burlington N. R.R. Co.,* 972 F.2d 1038, 1043–44 (9th Cir.1992) (attorney's mistake in pleading incorrect jurisdictional statute was not excusable neglect under Rule 60(b)(1)); *Lomas & Nettleton Co. v. Wiseley,* 884 F.2d 965, 967–68, 971 (7th Cir.1989) (district court abused discretion in granting Rule 60(b) relief on the basis of attorney's negligence); *In re Bowden,* 138 B.R. 584, 585 (Bankr. E.D.Ark.1992) (heavy caseload of debtors' attorney not excusable neglect under Rule 60(b)(1)). The court also notes the recent decision of the Eighth Circuit Court of Appeals where the court found that the Bankruptcy Court abused its discretion by reopening its judgment under Federal Rule of Civil Procedure 60(b), and the District Court erred in affirming such decision.

In the context of excusable neglect as a ground for relief from a judgment or order, Rule 60(b) is appropriately invoked to offer excuses for neglect leading up to the judgment in the first place, not excuses for neglect for failure to file post-judgment motions to alter or amend. (citations omitted). A Rule 60(b) motion alleging excusable neglect is appropriately used when seeking relief from judgment for excusable neglect, not when seeking relief from the deadlines set by the rules for post-judgment motions, even if those deadlines are not met because of excusable neglect.

*Ellis v. Ellis (In re Ellis),* 72 F.3d 628, 631 (8th Cir.1995).

Debtors did not timely appeal from the court's final order, and there was no stay pending appeal. The court is not aware of any reason to justify relief under Federal Rule of Civil Procedure 60(b), and none has been made evident in the arguments or documents presented by Debtors' attorney. There has been no suggestion of or reference to any authority by Debtors which would allow the court to change its order after the lapse of the one-year period of time set forth in Federal Rule of Civil Procedure 60(b). The failure of Debtors to timely appeal the court's October 20, 1992 order basically foreclosed the court's consideration of the merits of Debtor's argument with respect to such order. In addition, CCC has relied on the finality of the court's order for over three years. The court therefore finds no reason to reopen Debtors' bankruptcy case to allow Debtors to challenge its October 20, 1992 order. Federal Rule of Civil Procedure 60(b) constitutes a procedural bar to the court's relieving Debtors from such final order—which bar would exist even if the case had not been closed and were still open today. Court orders must have finality, and Federal Rule of Civil Procedure 60(b) indicates what that finality is with respect to excusable neglect.

Debtors' motion to reopen their bankruptcy case is denied. The court need not address CCC's argument that res judicata will govern the outcome of Debtors' attempt to obtain another review of the consent agreement, motion for disbursement of funds and order disbursing funds.

■■■ With regard to Debtors' argument that § 105 of the Code authorizes the court to reopen the case, the court understands that Code section to confer broad equitable powers upon bankruptcy courts. However, the court believes that its authority to enter orders is not unlimited, and that § 105 of the Code does not authorize bankruptcy courts to create substantive rights that are otherwise unavailable under the Code. The bankruptcy court's equitable discretion cannot be used in a manner which is inconsistent with the directives of the Code or Rules. *See Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206–207, 108 S.Ct. 963, 968–969, 99 L.Ed.2d 169, 179 (1988); *Shapiro v. Saybrook Mfg. Co., Inc. (In re Saybrook Mfg. Co., Inc.),* 963 F.2d 1490, 1495 (11th Cir. 1992).

An order in accordance with this Memorandum Opinion will be entered.